**A.C.S. WRIGHT, Appellant,**

v.

**SAGE ENGINEERING, INC., John S. Templeton, III, and Ronald L. Boggess, Appellees.**

**No. 01–03–01018–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 8, 2004.

Mario Alejandro Martinez, David L. Countiss, Fred Lee Butler, Adams And Reese, LLP, Houston, TX, for Appellant.

Melanie Goins Cowart, Akin, Gump, Strauss, Hauer & Feld, LLP, San Antonio, TX, David E. Warden, Eric P. Chenoweth, Yetter & Warden, L.L.P, Houston, TX, for Appellees.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

A.C.S. Wright ("Wright") appeals the denial of his special appearance [1] in a suit brought against him by appellees Sage Engineering, Inc., John S. Templeton, III, and Ronald L. Boggess. In addressing Wright's three issues raised on appeal, we

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004) (providing parties may challenge by interlocutory appeal trial courts' orders regarding special appearances).

determine (1) whether Wright properly asserted in the trial court his complaint that appellees failed to serve him in accordance with the Hague Convention, (2) whether Wright had the requisite minimum contacts with Texas for the trial court to exercise personal jurisdiction over him, and (3) whether the exercise of personal jurisdiction over Wright comports with traditional notions of fair play and substantial justice.

We affirm.

### Factual and Procedural Background

Wright is a citizen and resident of Switzerland. Sage Engineering, Inc. ("SEI") is a Texas corporation formed in 1995 with its principal place of business in Houston. SEI designs, manufactures, and sells miniature penetrometer testing equipment used in offshore oilfield production. The founding shareholders of SEI were John S. Templeton, III, ("Templeton"), Ronald L. Boggess ("Boggess"), and Sage Holding AG ("Sage Holding").

Wright is the sole director of Sage Holding. In November 2000, Wright signed an agreement for the sale of Sage Holding to Thales, Inc. Thales eventually merged Sage Holding into Thales Geosolutions, Inc. SEI, Templeton, and Boggess (collectively referred to as "appellees") sued Wright, Sage Holding, and several Thales entities.[2] Appellees allege that the defendants stole their design technology related to the miniature penetrometer testing equipment. The claims asserted by appellees included misappropriation of trade secrets, breach of fiduciary duty, unjust enrichment, breach of contract, conversion, conspiracy, fraud, and fraudulent inducement.

In their original petition, appellees made the following factual allegations:

- Boggess and Templeton provided SEI with their design technology for miniature penetrometer testing equipment.
- The design technology is the trade secrets and confidential information of the appellees.
- SEI was "the exclusive provider of the miniature penetrometer testing equipment to Sage Holding" and Sage Holding's corporate affiliates.
- Sage Geodia, a corporate affiliate of Sage Holding, purchased equipment and parts from SEI. Rather, than using this equipment to service their clients, Sage Geodia and "other affiliates" "reverse engineered" and duplicated the equipment and technology.
- Wright negotiated the purchase of Sage Holding by Thales. Under the terms of this agreement, Sage Holding agreed to provide Thales with "the technology, trade secrets, confidential information and other property and rights" of appellees.
- The Sage parties and Thales agreed to keep the negotiations secret from SEI and to exclude SEI from the corporate acquisition.
- Thales purchased Sage Holding in November 2000. At that time, Thales "folded" Sage Holding and SEI's misappropriated technology into Thales Geosolutions, which then used SEI's technology, i.e., trade secrets, to market and sell miniature penetrometer testing equipment.

Wright filed a special appearance asserting that he was not amenable to process issued by a Texas court. Wright argued that the trial court lacked personal juris-

---

**2.** Other defendants in the underlying suit include Thales Geosolutions, Inc., Thales S.A., Thales Geosolutions Group Ltd., and Sage Holding AG. These defendants are not parties to this interlocutory appeal.

diction over him because (1) appellees' failed to serve him through the Hague Convention; (2) Wright lacked the requisite minimum contacts with Texas to satisfy the requirements of due process; and (3) the trial court's exercise of personal jurisdiction over him does not comport with traditional notions of fair play and substantial justice. The trial court denied Wright's special appearance. This interlocutory appeal followed.

### Defective Service of Process

In his first issue, Wright contends that the trial court should have granted his special appearance on the basis that appellees failed to serve him with process in compliance with the Hague Convention. Appellees counter that Wright's special appearance was properly denied on this basis because, if he thought that service was defective, Wright should have raised that complaint in a motion to quash, not in a special appearance.[3]

■ A special appearance is a specific procedural mechanism to litigate one issue: that is, a special appearance is "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State." Tex.R. Civ. P. 120a; see also Tex. Commerce Bank N.A. v. Interpol 1980 Ltd. P'ship, 703 S.W.2d 765, 775 (Tex.App.-Corpus Christi 1985, no writ). The rule applies only when a defendant contends he is not amenable to process. See Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 201–02 (Tex.1985); Oliver v. Boutwell, 601

S.W.2d 393, 395 (Tex.Civ.App.-Dallas 1980, no writ). The words "not amenable to process issued by the courts of this state" mean that the special appearance is available solely to establish that the Texas court cannot, under the federal and state constitutions and the appropriate state statutes, validly obtain jurisdiction over the person or the property of the defendant. Kawasaki, 699 S.W.2d at 202.

■ Our supreme court held in Kawasaki that defective service of process must be challenged by a motion to quash rather than by a special appearance. Id. This is because a curable defect in service of process does not defeat a nonresident's amenability to the court's process and serves only to provide the non-resident defendant with more time to answer. See id. at 202; see also Tex.R. Civ. P. 122.

Wright acknowledges the holding in Kawasaki but argues that it has been called into question by the Unites States Supreme Court's decision in Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 346, 119 S.Ct. 1322, 1325, 143 L.Ed.2d 448 (1999). In Murphy Bros., the court held that mere receipt of a complaint unattended by any formal service did not trigger a defendant's time to remove a case from state court. Murphy Bros., 526 U.S. at 347–48, 119 S.Ct. at 1325. Wright cites Murphy Bros. for the proposition that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority by formal process." Murphy Bros., 526 U.S. at 347–48, 119 S.Ct. at 1325. Wright con-

---

3. Appellees also contend that this issue is moot because they have served Wright in accordance with the Hague Convention since the trial court denied Wright's special appearance. In the appendix to their brief, appellees have attached documents purportedly showing service in compliance with the trea-

ty; however, because these documents are not part of the appellate record in this case, we may not consider them. See Carlton v. Trinity Univ. Ins. Co., 32 S.W.3d 454, 457–58 (Tex.App.-Houston [14th Dist.] 2000, pet. denied).

tends that requiring him to raise his complaint regarding defective service in a motion to quash, rather than in a special appearance, violates this principle because it requires him to make an appearance in a suit for which he has not been properly served and forces him to waive his complaint that he is not amenable to process issued by a Texas court.

As an intermediate court of appeals, we must follow our state supreme court's expressions of the law and leave changes in the law to that court. *See Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002) ("It is not the function of a court of appeals to abrogate or modify established precedent. That function lies solely with [the Supreme] Court."); *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989) ("This court need not defend its opinions from criticism from courts of appeals; rather they must follow this court's pronouncements."). Absent a clear expression that a decision of our supreme court has been overruled, we are bound by its decisions. *See Trammel's Lubbock Bail Bonds*, 80 S.W.3d at 585; *Lofton*, 777 S.W.2d at 386. *Murphy Bros.* does not contain such a clear expression with regard to our supreme court's decision in *Kawasaki*. We also note that, since the issuance of the decision in *Murphy Bros.*, the Texas Supreme Court has cited *Kawasaki* for the proposition that a motion to quash is the appropriate device to object to procedural error in service. *See Baker v. Monsanto*, 111 S.W.3d 158, 161 (Tex.2003). Thus, we leave to our state supreme court—or the United States Supreme Court—the determination of whether the decision in *Kawasaki* is in conflict with the decision in *Murphy Bros.* Until that time, we are bound by *Kawasaki*.

Applying the principles enunciated in *Kawasaki* to the present case, we conclude that it was not appropriate for Wright to assert his complaint regarding defective service of process in his special appearance. A complaint regarding a curable defect in service of process, such as the one raised by Wright, does not defeat a nonresident's amenability to the court's process; thus, it should not be brought via a special appearance.[4] *See Kawasaki*, 699 S.W.2d at 202; *see also* TEX.R. CIV. P. 120a. Rather, a motion to quash is the appropriate procedural device to raise such objection. *See Wheat v. Toone*, 700 S.W.2d 915, 915 (Tex.1985); *Tex. Dept. of Pub. Safety v. Kreipe*, 29 S.W.3d 334, 336 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The remedy for defective service in Texas state court is additional time to answer the suit, not dismissal.[5] *See Kawasaki*, 699 S.W.2d at 202–03; *Alcala v. Williams*, 908 S.W.2d 54, 56 (Tex.App.-San Antonio 1995, no writ); *see also* TEX.R. CIV. P. 122. Accordingly, we hold that the trial court did not err in failing to grant Wright's special

4. Irrespective of the supreme court's opinion in *Kawasaki*, we also disagree with Wright's contention that requiring him to raise his complaint regarding defective service in a motion to quash rather than in a special appearance forces him to waive his complaint that he is not amenable to process issued by a Texas court. As noted by the intermediate appellate court in *Kawasaki*, such complaint is without merit because a complaining defendant can limit his rule 120a special appearance arguments to the lack of minimum contacts issue, and then, if that fails, he can immediately file a motion to quash. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 47(Tex.App.-Houston [14th Dist.] 1985), writ ref'd n.r.e. per curiam, 699 S.W.2d 199 (Tex. 1985).

5. Although Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) provide for dismissal of a suit for failure to serve process or for insufficient service of process, the Texas Rules of Civil Procedure do not contain analogous provisions. *See* FED.R.CIV.P. 12(b)(4), 12(b)(5).

appearance on the basis that appellees did not serve him with process in accordance with the Hague Convention.

We overrule Wright's first issue.

### Amenability to Service of Process

In his second issue, Wright contends that the trial court erred in denying his special appearance because he does not have sufficient minimum contacts with this forum for a Texas court to exercise personal jurisdiction over him.

### *General Principles of Personal Jurisdiction*

#### *Due process considerations*

▮▮▮ Two conditions must be met for a Texas court to exercise personal jurisdiction over a nonresident defendant such as Wright: the Texas long-arm statute must authorize the exercise of jurisdiction, and the exercise of jurisdiction must be consistent with the guarantees of due process. *Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex.2002); *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The long-arm statute provides for the assertion of jurisdiction over any nonresident "doing business" in Texas, which by statutory definition includes those defendants who commit torts in whole or in part in this state. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(2) (Vernon 1997). Because the language of the long-arm statute is broad, its requirements are considered satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). Thus, in practice, the two conditions are conflated into one requirement of due process. *City of Riverview, Michigan v. Am. Factors, Inc.,* 77 S.W.3d 855, 857 (Tex.App.-Dallas 2002, no pet.).

▮▮▮ The cornerstone of due process in the context of jurisdiction is the minimum contacts analysis. *Id.* The goal of this analysis is to protect a defendant from being unjustifiably called before the courts of a foreign state. *Id.* To establish minimum contacts with a state, the defendant "must do something purposeful to avail himself of the privilege of conducting activities in the forum, thus invoking the benefit and protection of its laws." *Schlobohm,* 784 S.W.2d at 357; *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985).

▮▮▮ A defendant should not be subject to the jurisdiction of a Texas court based upon random, fortuitous, or attenuated contacts. *CSR,* 925 S.W.2d at 595. The purposeful availment requirement ensures that the nonresident defendant's contact must result from its purposeful contact, not the unilateral activity of the plaintiff or a third party. *See Guardian Royal,* 815 S.W.2d at 227. It is the quality and nature of the contacts, rather than their number, that is important. *Id.* at 230, n. 11. The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant that create a substantial connection with the forum state. *Id.* at 226.

#### *Foreseeability*

▮▮▮ Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.* at 227. Foreseeability is not an independent component of the minimum contacts analysis but is implicit in the requirement that there be a "substantial connection" between the nonresident defendant and Texas arising from the action or conduct of the nonresident defendant purposefully directed toward Texas. *Id.* Individuals must have fair warning that a

particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King*, 471 U.S. at 472, 105 S.Ct. at 2182; *Guardian Royal*, 815 S.W.2d at 226. In other words, an important inquiry in the jurisdictional analysis is whether "the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

### Specific Jurisdiction

■ Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 & nn. 8–9, 104 S.Ct. 1868, 1872 & nn. 8–9, 80 L.Ed.2d 404 (1984); *Guardian Royal*, 815 S.W.2d at 227. Specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to the defendant's purposeful contact with the forum. *Helicopteros*, 466 U.S. 414 & n. 8, 104 S.Ct. at 1872 & n. 8; *Guardian Royal*, 815 S.W.2d at 228.

■ When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 227–28. It is not necessary that a nonresident defendant's conduct actually occur in Texas, as long as the defendant's acts were purposefully directed toward the state. *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984); *CSR*, 925 S.W.2d at 595. "[A] defendant should reasonably anticipate being haled into court where the effects of its conduct have been intentionally caused through the purposeful direction of activity toward the forum state, even if the defendant never

physically enters the state." *Cole v. Tobacco Inst.*, 47 F.Supp.2d 812, 815 (E.D.Tex.1999).

### Standard and Scope of Review

■ Whether a court has personal jurisdiction over a defendant is a question of law, which we review de novo. *Marchand*, 83 S.W.3d at 794. However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question. *Id.* When, as here, the trial court does not issue findings of fact and conclusions of law with its special-appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. In cases in which the appellate record includes both the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.* In contrast, we review the trial court's decision de novo when the underlying facts are undisputed or otherwise established. *AmQuip Corp. v. Cloud*, 73 S.W.3d 380, 384 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Experimental Aircraft Ass'n v. Doctor*, 76 S.W.3d 496, 502–03 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

### Specific Jurisdiction Based on Torts "Committed in Whole or in Part in Texas"

■ We begin our review of the trial court's denial of Wright's special appearance by determining whether specific jurisdiction exists over Wright. As plaintiffs, appellees bore the initial burden to make sufficient allegations to bring Wright within the personal jurisdiction of the trial court. *Marchand*, 83 S.W.3d at 793; *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex.1965). Once appellees met this burden, then Wright was required to negate

all possible grounds for personal jurisdiction. *Marchand,* 83 S.W.3d at 793.

 Appellees alleged in their original petition—the live pleading at the time the trial court decided the special appearance—that Wright committed tortious acts in Texas. Appellees correctly assert that our long-arm statute allows personal jurisdiction for any tort "committed in whole or in part in Texas." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2). Due process considerations are also satisfied if a defendant directs his tortious conduct toward the forum state with the foreseeable knowledge that his actions will cause harm to a resident of the forum and the defendant purposefully avails himself of the privilege of conducting activities within the forum state. *See Burger King,* 471 U.S. at 474–76, 105 S.Ct. at 2182–84; *Calder,* 465 U.S. at 789–90, 104 S.Ct. at 1487.

Appellees also alleged in their original petition that Wright induced Templeton and Boggess to contribute their trade secrets and "confidential information" to SEI. Appellees asserted, "Wright misrepresented the terms upon which these assets of Plaintiffs were contributed to SEI, as evidenced by ... misappropriating the trade secrets, confidential information, corporate assets and corporate opportunities of Plaintiffs Templeton and Boggess."

Appellees expounded on these allegations in their response to Wright's special appearance. In support of their response, appellees submitted the affidavit testimony of Templeton. Regarding misrepresentations made by Wright in Texas, Templeton's affidavit provided as follows:

> At the time of the formation of SEI, numerous representations were made by Wright and Sage Holding that equipment design technology, that I, along with Ronald Boggess, held at that time would remain the property of SEI, as would all corporate opportunities arising from the production and sale of that equipment. Those representations were made to me and Boggess and supported repeatedly by Wright in a series of telephone calls to me and SEI in Texas and e-mail correspondence sent to Texas, all of which occurred at the time of the formation of SEI in and around December 1995.[6]

We conclude that appellees met their burden of pleading sufficient jurisdictional allegations to bring Wright within the specific personal jurisdiction of the trial court.[7]

### *Fiduciary Shield Doctrine*

Because appellees met their initial burden, Wright was required to negate all possible grounds for personal jurisdiction. Within the context of the special appearance proceeding, Wright offered no evidence refuting appellees' claim that he

---

**6.** Wright objects to Templeton's affidavit on numerous grounds; however, none of these objections are specifically directed at Templeton's testimony regarding Wright's "numerous representations." For this reason, we do not address Wright's complaints regarding Templeton's affidavit.

**7.** We need not separately evaluate whether the trial court had jurisdiction over Wright based solely on the allegations in appellees' original petition. For purposes of this opinion, we assume, without deciding, that the allegations in appellees' original petition that

Wright committed torts in Texas, either alone or coupled with appellees' later assertions, offered in support of their response to Wright's special appearance, meet appellees' initial burden to plead sufficient jurisdictional facts. *See El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V.,* 82 S.W.3d 622, 629 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.) (concluding that plaintiff who pled that nonresident defendant was "doing business in the State of Texas" and had "committed torts in Texas" had pled sufficiently clear jurisdictional facts).

made the "numerous representations" referenced in Templeton's affidavit.[8] Wright neither disputes that the alleged representations were directed toward Texas nor denies that appellees' tort claims arise out of or relate to the representations. Wright also does not contend that he could not have reasonably foreseen being subject to jurisdiction in Texas because of such representations. Rather, Wright contends that he lacks the requisite minimum contacts with Texas because he performed the alleged tortious acts as a corporate representative of Sage AG, not in his individual capacity.

▮▮▮ In this respect, Wright invokes the fiduciary shield doctrine, which protects a corporate officer or employee from the trial court's exercise of general personal jurisdiction when all of the individual's contacts with Texas were on behalf of his employer.[9] *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 650–51 (Tex. App.-Fort Worth 2003, pet. filed); *Brown v. Gen. Brick Sales Co.*, 39 S.W.3d 291, 297–98 (Tex.App.-Fort Worth 2001, no pet.). Texas courts applying the fiduciary shield doctrine have expressly limited its application to attempts to exercise *general* jurisdiction over a nonresident defendant. *Stern v. KEI Consultants, Ltd.*, 123 S.W.3d 482, 488 (Tex.App.-San Antonio 2003, no pet. h.); *SITQ*, 111 S.W.3d at 651;

*Brown*, 39 S.W.3d at 300; *cf. Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 803 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (holding that fiduciary shield doctrine protected Australian resident from trial court's exercise of *general* jurisdiction because his only contacts with Texas were on his employer's business) (emphasis added).

▮▮▮ The fiduciary shield doctrine does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable. *Jackson v. Kincaid*, 122 S.W.3d 440, 448 (Tex.App.-Corpus Christi 2003, no pet. h.); *SITQ*, 111 S.W.3d at 651; *see also Gen. Elec. v. Brown & Ross Int'l Distribs., Inc.*, 804 S.W.2d 527, 532–33 (Tex.App.-Houston [1st Dist.] 1990, writ denied) (holding that corporate officers, who had personally arranged theft of design plans, ordered counterfeit and mislabeled parts, and made misrepresentations to customers were subject to personal jurisdiction in Texas). It is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a corporate representative. *Shapolsky v. Brewton*, 56 S.W.3d 120, 133 (Tex.App.-Houston [14th Dist.] 2001, pet. denied);

8. In an affidavit offered in support of his special appearance, Wright testified that he had committed no torts in Texas. Rule 120a provides affidavits shall "set forth specific facts as would be admissible in evidence...." TEX.R. CIV. P. 120a(3). Further, the affidavit must be direct, unmistakable, and unequivocal as to the facts sworn to, allowing perjury to be assigned on it. *See Burke v. Satterfield*, 525 S.W.2d 950, 955 (Tex.1975); *Int'l Turbine Service, Inc. v. Lovitt*, 881 S.W.2d 805, 808 (Tex.App.-Fort Worth 1994, writ denied). We agree with appellees that Wright's testimony that he committed no torts in Texas is a legal conclusion without any probative force. *See* Tex.R. Civ. P. 120a(3); *Brownlee v. Brownlee*,

665 S.W.2d 111, 112 (Tex.1984) (holding that affidavit must set forth facts, not mere legal conclusions). Thus, we do not consider Wright's statement in evaluating the propriety of the trial court's ruling on Wright's special appearance.

9. The fiduciary shield doctrine has not been expressly adopted by the Texas Supreme Court. The doctrine's application by Texas intermediate appellate courts was discussed in depth by the Fort Worth Court of Appeals in *Brown v. General Brick Sales Co.*, 39 S.W.3d 291, 297–99 (Tex.App.-Fort Worth 2001, no pet.).

*see also Miller v. Keyser*, 90 S.W.3d 712, 714–18 (Tex.2002) (holding sales agent may be held individually liable under DTPA for misrepresentations); *Barclay v. Johnson*, 686 S.W.2d 334, 336–37 (Tex.App.-Houston [1st Dist.] 1985, no writ) (holding corporate agent personally liable for false representations). The causes of action asserted by appellees against Wright individually, which are based on Wright's alleged misrepresentations, are claims for which Wright could be held individually liable. Therefore, the fiduciary shield doctrine is not available to Wright as a defense to the trial court's exercise of specific personal jurisdiction based on his alleged misrepresentations. *See D.H. Blair Investment Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.) (refusing to apply fiduciary shield doctrine to protect defendant from personal jurisdiction based on alleged misrepresentations that were directed into Texas and foreseeably relied on in Texas, despite defendant's claim that he acted only in corporate capacity); *Shapolsky*, 56 S.W.3d at 133–34 (same). We conclude that, by invoking the fiduciary shield doctrine, Wright has not satisfied his burden of negating the assertion of personal jurisdiction based on specific jurisdiction.

### Minimum Contacts Analysis

That Wright is alleged to have committed a tort in Texas is not dispositive of the jurisdictional issue presented here; such allegations alone do not give Texas courts jurisdiction over a nonresident. *Shapolsky*, 56 S.W.3d at 133. Rather, there must be a substantial connection between the contact and the cause of action in the forum state.[10] *See id.*

■ Comporting with well-settled law, this and other appellate courts have held that a misrepresentation made by a nonresident defendant directed toward Texas is sufficient to assert specific jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 127 S.W.3d 89, 98–99 (Tex.App.-Houston [1st Dist.] 2003, pet. filed) (holding that nonresident defendant had sufficient minimum contacts to subject it to specific personal jurisdiction in Texas in case in which plaintiff alleged that, during negotiations conducted by telephone, nonresident defendant made misrepresentations regarding product defendant sold to plaintiff and that these misrepresentations constituted violations of the DTPA, fraud, breach of warranty, and breach of contract); *Boissiere v. Nova Capital*, 106 S.W.3d 897, 904–06 (Tex.App.-Dallas 2003, no pet.) (concluding that allegations asserted in fraud and negligent misrepresentation case that nonresident defendants made misrepresentations in telephone calls to Texas resident, who relied on representations in Texas and was induced to provide defendants with plaintiff's trade secret information, were sufficient to support

10. In reaching a decision to exercise or decline jurisdiction based on the defendant's alleged commission of a tort, the trial court should rely only on the necessary jurisdictional facts and should not reach the merits of the case. *Ring Power Sys. v. Int'l de Comercio Y Consultoria*, 39 S.W.3d 350, 353 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943, 949 (Tex.Civ.App.-Texarkana 1977, no writ). In other words, ultimate liability in tort is not a jurisdictional fact, and the merits of the cause are not at issue. *Ring Power Sys.*, 39 S.W.3d at 353. Rather, the purpose of a special appearance is to determine whether the actions alleged by a plaintiff suggest that a defendant should expect to be subject to jurisdiction in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 127 S.W.3d 89, 97 (Tex.App.-Houston [1st Dist.] 2003, pet. filed). Accordingly, if the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is only that the purposeful act was committed in this State. *Ring Power Sys.*, 39 S.W.3d at 353; *Arterbury*, 553 S.W.2d at 947.

specific jurisdiction in Texas); *Shapolsky,* 56 S.W.3d at 135 (holding that plaintiff's allegations that nonresident defendant made intentional misrepresentations to plaintiff in Texas by phone, fax, and mail to induce plaintiff to contract with defendant were sufficient to support specific jurisdiction).

Regardless of what the evidence may ultimately show on full trial of this matter, the uncontroverted allegations and evidence presented within the context of the special appearance proceeding show the following: (1) Wright made numerous representations, oral and written, on which Templeton and Boggess relied, ultimately to their economic detriment; (2) Wright directed the alleged misrepresentations toward Texas residents who received and relied on the misrepresentations in Texas; and (3) Wright's misrepresentations induced Templeton and Boggess to transfer their proprietary information to SEI, a corporation formed under the laws of Texas, with its principal place of business in Houston. By making misrepresentations in Texas with the ultimate goal of obtaining the trade secrets of Texas residents, Wright purposefully availed himself of the benefits and protections of Texas law. *See Shapolsky,* 56 S.W.3d at 134. When, as here, a defendant intentionally sends false information into a state, knowing it will be relied on by a resident of the forum state, there is a foreseeable consequence of direct economic injury to the resident at its domicile. *Id.* Thus, it should have been foreseeable to Wright that he might be haled into a Texas court to defend a lawsuit arising out of the alleged misrepresentations. *See id.* Relatedly, a nexus exists between the torts that appellees claim against Wright and the alleged contacts with Texas; that is, Wright's alleged misrepresentations give rise to some of the causes of action appellees assert against him, particularly appellees' claims for fraud and fraudulent inducement. *See id.* (finding nexus between contacts and allegations that misrepresentations induced plaintiff to enter into contract with nonresident defendant). Thus, we conclude that Wright's alleged misrepresentations constitute sufficient purposeful minimum contacts with Texas to satisfy due process considerations.[11]

We overrule Wright's second issue.

### Fair Play and Substantial Justice

 Having concluded that Wright had sufficient contacts with Texas, we next consider Wright's third issue in which he contends that the exercise of jurisdiction over him offends traditional notions of fair play and substantial justice. *See Guardian Royal,* 815 S.W.2d at 231. The following factors, when appropriate, should be considered in making this assessment: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* When an international dispute is involved, the following factors, when appropriate, should also be considered: (1) the unique burdens placed upon the defendant who must defend itself in a foreign legal sys-

---

11. Because a nonresident defendant must successfully negate *all bases* of personal jurisdiction to prevail in a special appearance, we need not address appellees' other jurisdictional allegations advancing additional bases to support both general and specific jurisdiction over Wright. *See Boissiere v. Nova Capital,* 106 S.W.3d 897, 906 (Tex.App.-Dallas 2003, no pet.); *D.H. Blair Investing Banking Corp. v. Reardon,* 97 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.).

tem; and (2) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies. *Id* at 229. But only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when, as here, the nonresident defendant has purposefully established minimum contacts with the forum. *Id.* at 231. Thus, the burden is on the defendant to " 'present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable.' " *Id.* (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185) (emphasis added).

■■■ Wright first asserts that his status as an international defendant is a determinative factor in the fairness analysis. In support of this contention, Wright relies on our holding in *Minucci v. Sogevalor, S.A.,* 14 S.W.3d 790 (Tex.App.-Houston [1st Dist.] 2000, no pet.). In *Minucci,* we held that subjecting an Italian citizen to jurisdiction in Texas did not comport with traditional notions of fair play and substantial justice. *Id.* at 799. In reaching this decision, we reasoned as follows:

> Texas has no interest in adjudicating this dispute. The cause of action did not occur in Texas; neither party is a resident of this state; Swiss law governs the dispute, none of the investors were Texas citizens, and the contract was written in Italian. Thus, Texas would not be protecting its citizens from the potential future actions of Minucci.

*Id.* at 798. In this case, the opposite can be said. Here, Texas has a strong interest in adjudicating this dispute. As discussed in the minimum contacts analysis, Wright is alleged to have committed tortious acts in Texas against Texas residents. The State of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly those

disputes in which the defendant allegedly committed a tort in whole or in part in Texas. *Shapolsky,* 56 S.W.3d at 135.

In support of his contention that defending this case in Texas would subject him to extreme financial and personal burdens, Wright testified as follows in his affidavit offered in support of his special appearance:

> At the present time, I am the sole custodian for my three children who live with me in Switzerland. If I were compelled to appear in Texas to defend this lawsuit[,] it would be an extreme burden upon my children, and myself, to be away from them. It would also be a tremendous expense to have to travel to Texas to litigate this dispute while leaving my children behind in Switzerland. The financial expense of traveling to Texas while leaving my children behind in Switzerland, would place great strain on myself, and my family.
>
> On July 1, 2003, Thales Overseas Holdings Limited ("Thales Overseas") lodged a Request for Arbitration against me in accordance with Article 4 of the 1998 Rules of Arbitration of the International Chamber of Commerce. Thales Overseas request for Arbitration seeks monetary damages from me personally. The laws of Switzerland exclusively govern the Request for Arbitration. Thales Overseas acknowledges Switzerland's exclusive jurisdiction in its request. The arbitration is to take place in Zurich, Switzerland.
>
> . . . [H]aving to litigate one dispute in Texas and one dispute in Switzlerland over substantially the same issues would be a great hardship on me, and my children.

Undoubtedly, litigation away from home creates hardship for a defendant; however, there is no legal requirement that this hardship must be borne instead by the plaintiff whenever the defendant is not

found in the state of the plaintiff's residence. *See Brown & Ross Int'l Distribs.*, 804 S.W.2d at 531–32 (rejecting nonresident defendant's argument that defending suit in Texas was financially burdensome because it would be equally burdensome for plaintiff to litigate in nonresident defendant's forum). While the burden on the nonresident defendant is a consideration in our due process analysis, it is not determinative. *See Guardian Royal*, 815 S.W.2d at 231 (stating that nonresident defendant must present compelling case of presence of other considerations, outside inconvenience, and distance to render jurisdiction unreasonable). This is particularly true when, as in this case, Texas has a strong interest both in providing a forum for its residents and in holding parties who committed tortious acts against its residents accountable. *See id.* at 232 (recognizing that interests of forum state and plaintiff will frequently justify severe burden placed on nonresident defendant) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)). We conclude that the exercise of personal jurisdiction over Wright in this case comports with traditional notions of fair play and substantial justice.

We overrule Wright's third issue.

### Conclusion

We hold that the trial court properly denied Wright's special appearance. Wright did not successfully negate specific jurisdiction and failed to show that the exercise of personal jurisdiction over him offends traditional notions of fair play and substantial justice. We affirm the order of the trial court denying Wright's special appearance.