Reversed and Rendered and Opinion filed May 8, 2007








Reversed and Rendered and Opinion filed May 8, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00666-CV

_______________

 

JOSEPH A. CERBONE, Appellant

 

V.

 

CAROLYN FARB, Appellee

                                                                                                                                               


On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 04-36308

                                                                                                                                               


 

O P I N I O N

Appellant,
Joseph Cerbone, brings this interlocutory appeal from an order denying  his
special appearance.  In two issues, appellant argues (1) he is not subject to
the jurisdiction  of Texas courts and (2) the exercise of jurisdiction over
appellant would offend due process.  We reverse and render judgment dismissing
the cause of action.  








I.  Background 

This
suit followed execution of a settlement agreement and promissory note in
connection with prior litigation. The prior suit arose out of an
investor/broker relationship between Carolyn Farb, appellee, and American
Investment Services, Inc. (AAIS@).  Sometime before the year 2000, Farb opened a brokerage
account at AIS with Jorge Villalba serving as her stockbroker.  After
sustaining losses, she filed the first suit against AIS and Villalba and
alleged violations of the Texas Deceptive Trade Practices Act, Texas securities
laws, common law fraud, breach of fiduciary duty, negligence, and gross
negligence. On January 25, 2002, the first suit was settled at a mediation in
Texas. Farb signed a AConfidential Release and Settlement Agreement.@  Appellant did not attend the
mediation in Texas.  However, two days before the mediation, he signed the
settlement agreement in Illinois.  It is undisputed that he signed the
mediation agreement in his representative capacity as president and chief executive
officer of AISCO Holdings, Inc. (AAISCO@).  Under the agreement, AISCO agreed
to pay Farb, the sum of $82,500.00 Ain accordance with the form of
promissory note . . . attached . . . and incorporated by reference.@  Farb agreed to release, acquit, and
discharge AIS and AISCO and each of their respective employees Afrom any and all claims, demands,
liabilities, or causes of action@ relating to the allegations in the
prior suit.  On January 25, 2002, appellant signed the promissory note which
included terms requiring  twenty-seven monthly payments of $3,000 each, with
the first payment due on February 5, 2002.  

Farb
received the first payment on February 4, 2002, and filed a nonsuit dismissing
her claims against the parties on February 27, 2002.  When Farb did not receive
the second payment on March 5, 2002, she sent a letter to appellant as the
chief executive officer of AISCO on March 18, 2002. The payment was received
seventeen days late on March 22, 2002.  Farb sent a second letter on March 26,
2002, regarding the March 18, 2002 notice.  Farb did not receive any more
payments. 








During
May 2002, appellant=s association with AIS and AISCO ended.  Farb sent AISCO a
letter on November 25, 2002, demanding payment of $24,000 by December 10,
2002.  AIS and AISCO did not remit.  Consequently, Farb sent a letter on
December 11, 2002, demanding the unpaid principal and interest on the note in
the amount of $76,500.  Farb resent the November 25th and December 10th letters
on December 20, 2002.  Farb filed this suit on July 9, 2005, against AIS,
AISCO, and appellant alleging common law fraud, breach of contract, suit on an
open account or to enforce note payable, and conspiracy.  She also sought
declaratory relief and damages. In her petition, Farb asserted that appellant
is liable in his individual capacity on the promissory note.  Specifically,
Farb asserted appellant is personally liable on the note because he did not
sign the note in his representative capacity.  The only word below the signature
line is AMaker.@  However, we note that  AAISCO Holdings, Inc.@ is denominated as AMaker@ at the top of the note.

In
response to Farb=s suit, appellant filed a special appearance asserting that
the district court does not have specific or general jurisdiction.  The trial
court denied appellant=s special appearance on July 11, 2006.  

II.  Standard of Review

The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a non-resident defendant within the personal jurisdiction of a Texas court.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002); McKanna
v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965).  A defendant who challenges the
trial court=s exercise of personal jurisdiction through a special appearance bears
the burden of negating all bases of personal jurisdiction.  Marchand, 83
S.W.3d at 793; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985). 








Whether
a trial court has personal jurisdiction over a defendant is a question of law,
which we review de novo.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 805B06 (Tex. 2002); Marchand, 83 S.W.3d at 794.  However,
the trial court frequently must resolve questions of fact before deciding the
question of jurisdiction.  Marchand, 83 S.W.3d at 794.  When, as here,
the trial court does not issue findings of facts and conclusions of law with
its special appearance ruling, all fact findings necessary to support the
judgment and supported by the evidence are implied.  Id. at 795; Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  However, these implied
findings are not conclusive and may be challenged for legal and factual
sufficiency when this court has a complete record on appeal.  Marchand,
83 S.W.3d at 795. 

III.  The Law of Personal Jurisdiction 

A Texas
court may exercise personal jurisdiction over a non-resident defendant only if
(1) the Texas long-arm statute authorizes the exercise of personal
jurisdiction, and (2) the exercise of personal jurisdiction comports with the
state and federal constitutional guarantees of due process.  See id. 
The Texas long-arm statute permits Texas courts to exercise jurisdiction over a
non-resident that Adoes business@ in Texas.  Tex. Civ.
Prac. & Rem. Code  Ann. ' 17.042 (Vernon 1997).  The broad
language of the Adoes business@ requirement in section 17.042 permits the statute to reach Aas far as the federal constitutional requirements
of due process will allow.@  Guardian Royal Exch. Assur., Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  Thus, the requirements of
the long-arm statute are satisfied if the exercise of personal jurisdiction
comports with federal due process requirements.  See id.     








The due
process clause of the federal constitution permits a court to exercise
jurisdiction over a nonresident defendant if (1) the defendant has purposely
established Aminimum contacts@ with the forum state, and (2) the exercise of personal
jurisdiction does not offend traditional notions of fair play and substantial
justice.  Coleman, 83 S.W.3d at 806; Int=l Shoe Co. v. Washington, 326
U.S. 310, 316 (1945).  Minimum contacts must be based on Asome act by which the defendant
purposefully avails itself of the privilege of conducting activities within the
forum State, thus invoking the benefits and protections of its laws.@  Burger King v. Rudzewicz,
471 U.S. 462, 475 (1985). 

 The
requisite extent of the minimum contacts varies depending upon whether the
litigants assert specific or general jurisdiction.  Guardian Royal, 815
S.W.2d at 227; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 414 (1984).  The parties acknowledge that this appeal turns on
whether the trial court has specific jurisdiction. Therefore, we limit our
analysis to determining whether appellant=s contacts with Texas give rise to
specific jurisdiction. When specific jurisdiction is asserted, the minimum
contacts analysis focuses on the relationship between the defendant, the forum,
and the litigation.  Guardian Royal, 815 S.W.2d at 228.  The cause of
action must arise out of or relate to the nonresident defendant=s contact with the forum state.  Id.
at 227.  Specific jurisdiction is established when (1) a defendant=s contacts with the forum are
purposeful and not based on the unilateral activity of the plaintiff or others,
and (2) the cause of action arises from or relates to a defendant=s Apurposefully directed@ activities to the forum. Id. at
227B28.   








APurposeful availment@ is the touchstone of jurisdictional
due process.  Michiana Easy Livin= Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005). 
In Michiana, the Texas Supreme Court articulated three important aspects
of the purposeful availment inquiry. Id. at 785.  First, only the defendant=s contacts with the forum count. 
Id.  This ensures that a defendant will not be haled into a jurisdiction
solely as a result of Aunilateral activity of another party or a third party.@  Id.  (quoting Burger King,
471 U.S. at 475); Guardian Royal, 815 S.W.2d at 226.   Second, the acts
relied upon must be purposeful.  Id.  A defendant will not be haled into
a jurisdiction solely based on contacts that are Arandom, isolated, or fortuitous.@  Michiana, 168 S.W.3d at 784
(quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)).  
Third, a defendant Amust seek some benefit, advantage, or profit by >availing= itself of the jurisdiction@ because A[j]urisdiction is premised on notions
of implied consentCthat by invoking the benefits and protections of a forum=s laws, a nonresident consents to
suit there.@  Id.  (citing World-Wide Volkswagen Corp. v. Woodson, 444
U.S. 286, 297 (1980)).  

IV.  Analysis

In his
first issue, appellant contends the trial court erred by denying his special
appearance because (1) appellant=s contact with Texas does not satisfy
the purposeful availment requirement of the minimum contacts test and (2) Farb=s claims of fraud provide no basis
for assertion of specific jurisdiction.  

A.        Minimum Contacts

A
specific jurisdiction minimum-contacts analysis must focus on appellant, the
state of Texas, and the litigation. Guardian Royal, 815 S.W.2d at 228. 
In this case, the litigation arises out of, and relates to, a promissory note
signed by appellant as part of an agreement to settle prior litigation between
Farb, AIS, AISCO, and Villalba.  This is the single contact for our consideration.[1] 
To exercise specific jurisdiction over appellant individually, there must be
some act in regard to the signing of the promissory note or by which appellant
purposefully availed himself of the benefits and protections of the laws of
Texas.  See Burger King, 471 U.S. at 475.  

Appellant
contends his contact with Texas does not satisfy Apurposeful availment@ standards as discussed by the Texas
Supreme Court in Michiana. See 168 S.W.3d at 785. Specifically,
appellant contends (1) third-party contacts are not relevant, (2) his only
contact is fortuitous and not purposeful, and (3) he did not benefit from his
execution of the promissory note.  








1.         Third
party contacts

First, under Michiana, only
the defendant=s contacts with the forum are considered in the analysis.  Id.  A
defendant will not be haled into a jurisdiction solely as a result of the Aunilateral activity of another person
or a third person.@ Id.  Appellant contends Farb blurs the distinction
between his acts and acts of the companies he represented. Appellant points out
it is undisputed that he signed the settlement agreement while in Illinois and
only in his representative capacity.  He further notes that the prior
litigation and the settlement agreement are contacts involving third partiesCAISCO and AISCand not appellant and therefore
should not be considered in our minimum contacts analysis.  

2.         Contact is fortuitous and
not purposeful

Representative Capacity

Second, under Michiana, the
acts relied upon must be Apurposeful@ rather than fortuitious.  Id.  Appellant contends his
contact was Amerely a fortuitous mistake@ and not a sufficient contact to
justify exercise of jurisdiction because appellant intended to execute the
promissory note only as a representative of AISCO.  First, appellant argues he
was acting in his representative capacity because the record reflects he: (1)
was not a party to the prior litigation, (2) did not participate either in
person or by phone in the mediation of the prior litigation, (3) is not
mentioned as a party in the settlement agreement, (4) the settlement agreement
states AAISCO Holdings, Inc. agrees to pay
Farb the total sum of $82,5000.00,@ (5) he signed the settlement
agreement as the President of AISCO and as the CEO of AIS, (6) none of the
demand letters indicated appellant was individually liable on the note, (7) the
top of the note provided AMaker: AISCO Holdings, Inc.,@ and (8) none of the payments made
under the promissory note were made by appellant individually. 








In addition, appellant argues he is
protected by the fiduciary shield doctrine because he signed the note in a
corporate capacity.  The fiduciary shield doctrine protects a corporate officer
or employee from the exercise of general personal jurisdiction when all of the
contacts with Texas were on behalf of his employer.  Wright v. Sage
Eng=g,
137 S.W.3d 238,  250 (Tex. App.CHouston [1st Dist.] 2004, pet. denied).  Texas courts
applying the fiduciary shield doctrine have limited its application to attempts
to exercise general jurisdiction over a nonresident defendant.  Id. 
However, it does not protect a corporate officer from specific personal
jurisdiction as to intentional torts or fraudulent acts for which he may be
held individually liable.  Id.  Appellant concedes the fiduciary shield
doctrine does not protect a corporate officer from specific jurisdiction as to
intentional torts or fraudulent acts for which he may be liable; however, he
argues that breach of contract is not a tort and, therefore, the fiduciary
shield doctrine is not applicable.  See id.  








In response, Farb argues appellant
did not prove he signed the promissory note in a representative capacity and
appellant=s subjective intent is not relevant to the analysis.  Farb refers to case
law and statutes pertaining to determination of an individual=s liability who purportedly signs a
promissory note in a representative capacity.  See Tex. Bus. & Com. Code Ann. ' 3.402(b)(2) (Vernon 2002)
(determining liability of negotiable instruments purportedly signed in a
representative capacity); Suttles v. Thomas Bearden Co., 152 S.W.3d 607,
612B13 (Tex. App.CHouston [1st Dist.] 2004, no pet.)
(explaining how to determine liability of promissory note based on form of
signature block under section 3.402(b)(1) of the Texas Business and Commerce
Code); Caraway v. Land Design Studio, 47 S.W.3d 696, 700 (Tex. App.CAustin 2001, no pet.) (explaining how
to determine liability of promissory note based on language of instrument and
section 3.402 of the Texas Business and Commerce Code); A. Duda & Sons
v. Madera, 687 S.W.2d 83, 85 (Tex. App.CHouston [1st Dist.] 1985, no writ)
(explaining signer is liable on a note where the instrument does not show on
its face that he signed in a representative capacity). However, none of these
cases involve disputes regarding exercise of personal jurisdiction.  Here, the
issue before us is not a determination of appellant=s liability under the promissory
note, but whether his signature on the note is a sufficiently purposeful
contact to justify the exercise of jurisdiction. See Glattley v. CMS Viron
Corp., 177 S.W.3d 438, 449 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (Amerits of claims are not at issue
during a special appearance@); Wright, 137 S.W.3d at 251 n.10. 

Single, contractual
contact 

Appellant further contends his single
contactCexecution of the promissory note
outside of TexasCdoes not meet the purposeful availment standard
notwithstanding the question of representative capacity.  Appellant refers us
to the Texas Supreme Court=s Michiana decision and the United States Supreme
Court=s Burger King decision.  The Burger
King court explained that the fact a nonresident enters into a contract
with a resident of the forum does not automatically establish sufficient
minimum contacts with that forum. 471 U.S. at 478.  The Michiana court
explained, Athe United States Supreme Court has emphatically answered the question
whether a single contract with a Texas resident can automatically establish
jurisdictionC>the answer clearly is that it cannot.=@ 169 S.W.3d at 786 (citing Burger
King, 471 U.S. at 478).  Moreover, A[i]t is true that in some
circumstances a single contract may meet the purposeful availment
standard, but not when it involves a single contact taking place outside
the forum state.@ Id. at 787 (emphasis in original) (citing a long-term
franchise agreement and a life-insurance policy as examples of a single
contract involving a series of contacts). 








In response, Farb argues Burger
King and Michiana do not apply to this case because  those cases
concern contracts for a good or service and do not involve the execution of a
contract.  Farb further contends the act of signing the promissory note in this
case was purposeful because appellant Apersonally executed a promissory note
in favor of a Texas resident to settle litigation pending in a Texas state
court.@  To support her argument that
appellant=s signing of the note was purposeful because it settled pending
litigation in Texas, appellant cites Diversified Resources Corp. v.
Geodynamics Oil and Gas Incorp., 58 S.W.2d 97 (Tex. App.CCorpus Christi 1977, writ ref=d n.r.e.).  In Diversified
Resources, the defendant, a Nevada resident, entered into an agreement and
signed a promissory note to settle litigation filed by the Texas plaintiff in
the Southern District of Texas, Corpus Christi Division.  Id.  The note
was executed in favor of the Texas plaintiff and provided that the payments be
made in Texas.  Id.  When the defendant did not make the payments as
promised, the Texas plaintiff brought suit in a Texas court.  Id. at
98.  The Corpus Christi Court of Appeals explained, Athere were contacts by the defendant
in Texas other than making of payments; to-wit, the settling of aforesaid
lawsuit between the parties here and the making of an agreement to implement
the settlement.@  Id. at 99.  The court held that  executing the note
was sufficient to warrant exercise of specific jurisdiction over the defendant
because it Anot only purposefully conducted business in the State of Texas but it
also contracted to perform its obligations within the State of Texas, thus
invoking the benefits and protections of this State=s law.@  Id. 

Here, however, there is an important
factual distinction between this case and Diversified Resources.  In
this case, the prior law suit was between Farb, AIS, AISCO, and Villalba. 
Appellant asserts that unlike the defendant in Diversified Resources,
appellant was not a defendant in the underlying case that was settled by an
agreement and a promissory note.  Furthermore, unlike Diversified Resources,
in this case it is clear that appellant is not a party to the settlement
agreement in his individual capacity.  Appellant never personally made a
payment in settlement of the suit, and settlement of the prior lawsuit did not
provide any personal benefit to appellant.  








Farb also cites this court=s decision in Turner v. Turner where
we applied Diversified Resources.  No. 14-98-00510-CV, 1999 WL 33659
(Tex. App.CHouston [14th Dist.] Jan. 25, 1999, no pet.) (not designated for
publication).  The appellant in Turner, Mary Turner, a non-resident,
voluntarily intervened in an action in Texas seeking the appointment of a
guardian for John Turner and filed by Bryon Turner.  Id. at *1.  Mary
and Bryon entered into an agreed judgment for Mary to perform certain duties
imposed on her by a revokable trust.  Id.   It also provided the court
had personal jurisdiction over the parties.  Id.  After John=s death, Bryon filed a petition to
enforce the trust and remove Mary as trustee.  Id.  In finding the trial
court had personal jurisdiction over Mary, this court explained that Mary, as
intervenor in the guardianship suit, inserted herself into the proceeding and
availed herself of the Texas judicial system thereby conferring specific
jurisdiction on the trial court.  Id. at *7.  However, appellant argues
and we agree, Turner is distinguishable.  In this case, appellant never
availed himself of the Texas judicial system.  He also did not insert himself
in the prior suit nor enter into an agreed judgement.  

3.         No
personal benefit derived from his execution of the promissory note

Third, a defendant must seek some
benefit, advantage, or profit by Aavailing himself of the jurisdiction.@  Michiana, 168 S.W.3d at
785.  Appellant contends he did not personally benefit from execution of the
promissory note.  Specifically, appellant contends he received no benefit
because he was not a party to the prior litigation or the settlement agreement
and intended to sign the promissory note only as the representative of AISCO, AMaker@ of the note.  Therefore, any alleged
benefit from the settlement agreement and the promissory note inured only to
the prior litigants, not appellant individually.  

Accordingly, we agree with appellant,
that he did not purposefully avail himself of Texas jurisdiction under the Michiana 
guidelines.  Appellant=s signature on the promissory note, his sole  Acontact@ with Texas, does not satisfy the Apurposeful availment@ requirement.  Even if he signed in
his individual capacity,  his individual involvement would have begun at the
time the promissory note was executed because all other documents executed
previously clearly indicated that he signed in a representative capacity.  This
one contact is not sufficient to fulfill the purposeful availment
requirement.   

B.        Tort
Allegations








Alternatively, Farb contends
appellant fraudulently induced her to settle the prior litigation and his
alleged misrepresentations constitute Aadditional purposeful contact with
Texas and further justify the court=s assertion of specific jurisdiction.@  Specifically, Farb contends
appellant=s signature on the promissory note and the arrival of the February
payment fraudulently induced her to settle the prior litigation.  However, in Michiana,
the Texas Supreme Court expressly rejected  personal jurisdiction based solely
on the effects or consequences of an alleged tort committed in another forum
that had repercussions in Texas.  See 168 S.W.3d at 790B92.  Instead of considering whether a
tort was directed to Texas, the Texas Supreme Court explained that courts
should limit their jurisdictional evaluations to the actual business contacts
rather than on what the parties thought, said, or intended.  Michiana,
168 S.W.3d at 791.  A minimum-contacts analysis focuses solely on the actions
and reasonable expectations of the defendant.  Id. at 790.  The court
further explained that if directing a tort at Texas was enough for minimum
contacts, then personal jurisdiction would arise when the plaintiffs allege a
tort, but not when they allege breach of contract.  Id. at 791. Thus,
the defendant=s purposeful availment would depend on the form of claim selected by the
plaintiff.  Id.  Appellant refers us to the recent Austin Court of Appeals
case Niehaus v. Cedarbridge, in which the plaintiff alleged corporate
officers were individually liable for payments under a lease even though they
were not parties to the lease in their individual capacity based on the theory
that bonuses paid to the individuals were fraudulent transfers in detriment to
the plaintiff=s rights as a creditor under the lease.  208 S.W.3d
575, 577S79 (Tex. App.CAustin, no pet.). 
Relying on Michiana and the fact that the allegedly fraudulent activity
occurred in California, the court explained, A[a]lthough the
injury felt in Texas may constitute a contact with the forum, it does not, on
its own, constitute sufficient minimum contacts with the forum for
jurisdictional purposes.@  Id.  at 583.  The court concluded
the California defendants were not subject to the personal jurisdiction of the
Texas court.  Id.  at 584.  

Following the
court=s rationale in Michiana,
we cannot say that appellant=s single contactCthe execution of a
promissory noteCis sufficient to confer jurisdiction on
the Texas district court.  In sum, for the reasons stated above, we cannot
conclude that this one contact constitutes purposeful availment under the
minimum-contacts test.  

 Because we have sustained appellant=s first issue, we do not reach
appellant=s second issue which pertains to due process.  Accordingly, we reverse
and render judgment 








dismissing
this action for lack of personal jurisdiction.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed May 8, 2007.

Panel consists of Justices Yates, Seymore, and Guzman.

 

 

 

 









[1]  The parties dispute the capacity in which appellant
signed the note.  Appellant contends he signed the note in his representative
capacity because the top of the note  provides AMaker: AISCO Holdings, Inc.,@
and he signed above a signature line labeled, AMaker.@  Farb contends appellant is personally liable on the
note because he signed as AMaker@ without an indication directly below the signature
line that he was signing in any representative capacity.