Opinion issued March 10, 2005
     










In The 
Court of Appeals
For The
First District of Texas




NO. 01-02-00344-CV




KMG KANAL-MULLER-GRUPPE DEUTSCHLAND GMBH & CO. KG
AND KMG INTERNATIONAL GMBH & CO. KG, Appellants

V.

ROBERT C. DAVIS, Appellee




On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 99-24707




 O P I N I O N
          This is an appeal of the trial court’s award of $1,000,000 to plaintiff/appellee,
Robert C. Davis, after the jury determined that defendants/appellants, KMG Kanal-Muller-Gruppe Deutschland GmbH & Co. KG (KMGD) and KMG International
GmbH & Co. KG (KMGI) made a negligent misrepresentation to Davis in regard to
his employment, a misrepresentation on which Davis relied and from which he
sustained damages. 
          In eight issues, appellants contend (1) the trial court erred in denying KMGD’s
special appearance; (2) the trial court erred in overruling appellants’ motion to
exclude the expert testimony of Keith Fairchild; (3) whether Davis was a member of
the company Inliner Advantage was a question of law, not fact, which was previously
answered in the negative by the trial court in summary judgment and should not have
been submitted to the jury; (4) there was no evidence to support the jury’s answer that
Davis was a member of Inliner Advantage or that appellants made any negligent
representation to Davis; (5) the damages question should not have been submitted to
the jury because there was no evidence to support it, the measure of damages used
was improper, and the damages question impermissibly commingled past and future
damages; (6) the jury provided irreconcilable answers to questions six and seven; (7)
the trial court erred in denying appellants’ motion for directed verdict; and (8)
prejudgment interest was improperly awarded. We modify the judgment and, as
modified, affirm.
 
 
Factual Background
          KMGD, a German company, manufactures and licenses a technology to repair
broken sewer and drainage pipes extending from residences to sewage treatment
plants without having to remove the pipes—a technology known as the Inliner Cured-In-Place Pipe System. KMGI, a subsidiary of KMGD created to market the
technology internationally, granted an exclusive license to a Houston-based company,
Inliner U.S.A., to repair pipes in the United States using Inliner technology and to
sublicense others to perform such repairs. Inliner U.S.A. hired Davis in 1991. Six
years later, after problems developed between KMGI and Inliner U.S.A., KMGI
terminated the licensing agreement with Inliner U.S.A. and filed suit against the
company. In the meantime, Davis had left his job at Inliner U.S.A. 
          KMGI created a new company—Inliner Advantage—to replace Inliner U.S.A. 
as the exclusive license-holder for the United States and hired Davis to serve as the
new company’s general manager. The parties signed an employment agreement that
set out Davis’s base salary, granted him a membership interest in Inliner Advantage
equal to five percent of the company’s outstanding capital interest at the time of
issuance, and guaranteed him incentive compensation for the execution of each
sublicense—ten percent of the license fee or $10,000, whichever was greater, payable
after the sublicensee had generated over $100,000 from installations. 
          After Inliner Advantage lost money during its first year of operations, KMGI
sought to merge the company with another that was more financially secure. KMGI
originally entered into contract negotiations with Reynolds, Inc., which was already
sub-licensed by KMGI, and attempted to amend Davis’s employment contract 
specifically to exclude any incentive compensation to Davis based on the negotiations
with Reynolds, Inc. Davis refused to sign, and KMGI ultimately contracted with
Johnson Suisse PTE, Ltd. and Johnson Pacific PTE, Ltd. to create a third
business—Inliner Technologies, Inc.—to replace Inliner Advantage and to take over
the tasks of marketing and licensing Inliner technology in the United States and, in
addition, Canada. Johnson Suisse hired Davis to run this new company, but Davis
left the company in 2001. 
          Davis received neither the five-percent membership interest in Inliner
Advantage nor any of the promised incentive compensation for the execution of
sublicenses. He sued KMGI and KMGD for breach of contract and negligent
misrepresentation. A jury found in his favor, and this appeal ensued.
Special Appearance
          In its first issue, KMGD contends that the trial court erred in denying its special
appearance because KMGD did not have sufficient minimum contacts with this forum
for a Texas court to exercise personal jurisdiction over it.
 
 
          Personal Jurisdiction
          Two conditions must be met for a Texas court to exercise personal jurisdiction
over a non-resident defendant: the Texas long-arm statute must authorize the exercise
of jurisdiction, and the exercise of jurisdiction must be consistent with the guarantees
of due process. Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex.
2002); Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). 
          The Texas long-arm statute allows a Texas court to exercise personal
jurisdiction over a non-resident defendant that does business in Texas. Tex. Civ.
Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). A non-resident does business in
Texas if it (1) contracts by mail or otherwise with a Texas resident and either party
is to perform the contract in whole or in part in this state; (2) commits a tort in whole
or in part in this state; or (3) recruits Texas residents, directly or through an
intermediary located in this state, for employment inside or outside this state. Id. In
addition, the statute provides that “other acts” by the non-resident can satisfy the
requirement of “doing business” in Texas. Id.; see also Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 227 (Tex. 1991).
          Because the language of the long-arm statute is broad, its requirements are
considered satisfied if the exercise of personal jurisdiction comports with federal due
process limitations. CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996). Due process
considerations are satisfied if a defendant directs his tortious conduct toward the
forum state with the foreseeable knowledge that his actions will cause harm to a
resident of the forum and the defendant purposefully avails himself of the privilege
of conducting activities within the forum state. See Burger King Corp. v. Rudzewicz, 
471 U.S. 474-76, 105 S. Ct. 2182-84 (1985).



          The cornerstone of due process in the context of personal jurisdiction is the
minimum-contacts analysis. Schlobohm, 784 S.W.2d at 357. The goal of this
analysis is to protect a defendant from being unjustifiably called before the courts of
a foreign state. Id. To establish minimum-contacts with a state, the defendant “must
do something purposeful to avail himself of the privilege of conducting activities in
the forum, thus invoking the benefit and protection of its laws.” Id.; see also Burger
King, 471 U.S. at 474-76, 105 S. Ct. at 2183-84. A defendant should not be subject
to the jurisdiction of a Texas court based upon random, fortuitous, or attenuated
contacts. CSR Ltd., 925 S.W.2d at 595. The purposeful availment requirement
ensures that the non-resident defendant’s contact must result from its purposeful
contact, not the unilateral activity of the plaintiff or a third party. See Guardian
Royal, 815 S.W.2d at 227. It is the quality and nature of the contacts, rather than their
number, that is important. Id. at 230 n.11. The exercise of personal jurisdiction is
proper when the contacts proximately result from actions of the non-resident
defendant that create a substantial connection with the forum state. Id. at 226.
          Although it is not determinative, foreseeability is an important consideration
in deciding whether the non-resident defendant has purposefully established
minimum contacts with the forum state. Id. at 227. Foreseeability is not an
independent component of the minimum-contacts analysis but is implicit in the
requirement that there be a “substantial connection” between the non-resident
defendant and Texas arising from the action or conduct of the non-resident defendant
purposefully directed toward Texas. Id. Individuals must have fair warning that a
particular activity may subject them to the jurisdiction of a foreign sovereign. Burger
King, 471 U.S. at 472, 105 S. Ct. at 2182; Guardian Royal, 815 S.W.2d at 226. In
other words, an important inquiry in the jurisdictional analysis is whether “the
defendant’s conduct and connection with the forum State [is] such that he should
reasonably anticipate being haled into court there.” World-Wide Volkswagen Corp.
v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).
          Personal jurisdiction exists if the non-resident defendant’s minimum-contacts
give rise to either specific jurisdiction or general jurisdiction. Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 & nn.8-9, 104 S. Ct.
1868, 1872 & nn.8-9 (1984). General jurisdiction is present when a defendant’s
contacts are continuous and systematic, allowing the forum to exercise personal
jurisdiction over the defendant even if the cause of action did not arise from or relate
to activities conducted within the forum state. Guardian Royal, 815 S.W.2d at 228. 
General jurisdiction requires a showing that the defendant conducted substantial
activities within the forum, a more demanding minimum-contacts analysis than for
specific jurisdiction. Id.
          Specific jurisdiction is established if the non-resident defendant’s alleged
liability arises from or is related to the defendant’s purposeful contact with the forum. 
Helicopteros, 466 U.S. 414 & n.8, 104 S. Ct. at 1872 & n.8. When specific
jurisdiction is asserted, the minimum-contacts analysis focuses on the relationship
among the defendant, the forum, and the litigation. Guardian Royal, 815 S.W.2d at
227-28. It is not necessary that a non-resident defendant’s conduct actually occur in
Texas, as long as the defendant’s acts were purposefully directed toward the state. 
CSR Ltd., 925 S.W.2d at 595. A defendant should reasonably anticipate being haled
into court when the effects of its conduct have been intentionally caused through the
purposeful direction of activity toward the forum state, even if the defendant never
physically enters the state. Wright v. Sage Eng’g, Inc., 137 S.W.3d 238, 248 (Tex.
App.—Houston [1st Dist.] 2004, pet. denied). When, as here, the foreign defendant
has had a single or few contacts with the forum by virtue of a contract, prior
negotiations and contemplated future consequences, along with the terms of the
contract and the parties’ actual course of dealing, must be evaluated to determine
whether the defendant purposefully established minimum-contacts within the forum. 
Burger King, 471 U.S. at 498, 105 S. Ct. at 2186.
          Standard of Review
          Whether a court has personal jurisdiction over a defendant is a question of law,
which we review de novo. Marchand, 83 S.W.3d at 794. However, the trial court
frequently must resolve questions of fact before deciding the jurisdictional question. 
Id. When, as here, the trial court does not issue findings of fact and conclusions of
law with its special-appearance ruling, all facts necessary to support the judgment and
supported by the evidence are implied. Id. at 795. However, in cases in which the
appellate record includes both the reporter’s and clerk’s records, as it does here, these
implied findings are not conclusive and may be challenged for legal and factual
sufficiency. Id.
          KMGD’s Purposeful Contacts with Texas
          We begin our review of the trial court’s denial of KMGD’s special appearance
by determining whether specific jurisdiction exists over it. As plaintiff, Davis bore
the initial burden to make sufficient allegations to bring KMGD within the personal
jurisdiction of the trial court. See Marchand, 83 S.W.3d at 793; Wright, 137 S.W.3d
at 249. Once Davis met this burden, KMGD was required to negate all possible
grounds for personal jurisdiction. See Marchand, 83 S.W.3d at 793. 
 
          In his live pleadings on file when the trial court decided the special appearance,
Davis, a Texas resident, relied on the employment contract he had entered into with
KMGD’s managing partner, Hans Muller, and alleged that every KMG entity,
including KMGD, had committed tortious acts in Texas. Our long-arm statute allows
personal jurisdiction over a non-resident defendant (1) that contracts by mail or
otherwise with a Texas resident if either party is to perform the contract in whole or
in part in this state, (2) that commits a tort in whole or in part in this state, or (3) that
recruits a Texas resident for employment. Tex. Civ. Prac. & Rem. Code Ann. §
17.042(2). 
          The record shows that, although much of the business activity regarding Inliner
Technologies took place in Germany, KMGD did conduct business in Texas. In
1998, unbeknownst to Davis, Muller transferred the United States licensing rights to
Inliner technology from KMGI to KMGD, giving KMGD a “slice of the pie.” 
KMGD, in turn, granted the exclusive right to license and market the technology to
Johnson Suisse. The contract between KMGD and Johnson Suisse transferred the
rights to a Texas company, Inliner Technologies. In 1999, KMGD entered into a
contract with Inliner Technologies that called for performance in Texas. Inliner
Technologies had its headquarters in Houston, and Davis managed Inliner
Technologies, as he had its predecessor, Inliner Advantage. Muller and Davis
negotiated Davis’s employment contract in Germany while Muller was the managing
director of both KMGI and KMGD.
          After examining the prior negotiations, contemplated future consequences, the
terms of the contract, and the parties’ actual course of dealing, we conclude that
KMGD should have reasonably anticipated being haled into court in Texas, where the
effects of its conduct were intentionally caused through the purposeful business
activity it directed toward this state. See Burger King, 471 U.S. at 498, 105 S. Ct. at
2186. Accordingly, Davis met his burden of pleading sufficient jurisdictional
allegations to bring KMGD within the specific personal jurisdiction of the trial court. 
The trial court did not err in denying KMGD’s special appearance.
          We overrule the first issue.
Expert Economic Testimony
          In their second issue, appellants contend the trial court erred by not granting
their motion to exclude the expert testimony of Dr. Keith Fairchild, an economist who
testified at trial as to the “present and future value” of Davis’s employment contract 
and who presented a damages model to the jury. 
          Before addressing appellants’ challenge to Fairchild’s testimony, we first 
consider Davis’s contention that appellants waived their objection to Fairchild’s
testimony because they did not re-urge their objection to his testimony during the
trial. Davis relies solely on Piro v. Seraphim, 80 S.W.3d 717, 720 (Tex.
App.—Houston [1st Dist.] 2002, no pet), to argue that appellants were obligated to
object a second time to Fairchild’s testimony when he was offered as an expert during
trial, even though there was a pre-trial Robinson-Daubert hearing.


 We reject this
contention. Even if we agreed that Piro expressly stands for this proposition of law,
which we do not, the circumstances before us are distinguishable. In Piro, the trial
court based its ruling solely on a pre-trial review of the expert’s affidavit and
deposition, not on his live testimony. Id. Here, the trial court was able to evaluate
Fairchild’s testimony at a pre-trial Robinson-Daubert hearing; the court was not
limited to written documents, as was the court in Piro. In addition, despite appearing
to require repeated objections, as Davis argues, this Court actually observed in Piro
that a party must object to expert evidence before trial or when it is offered, not
before trial and when it is offered. Id. at 720-21 (citing Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 409 (Tex. 1998) (“[T]o preserve a complaint that scientific
evidence is unreliable and thus, no evidence, a party must object to the evidence
before trial or when the evidence is offered.”)). Appellants made a proper and timely
objection before trial to Fairchild’s testimony; thus, they are not precluded from
alleging error on appeal. Accordingly, we turn to the issue of whether Fairchild’s
expert testimony was properly admitted.
 
          Standard of Review
          The trial court acts as an evidentiary gatekeeper to screen out irrelevant and
unreliable expert evidence. Exxon Pipeline Co. v. Zwahr, 88 S.W.3d 623, 629 (Tex.
2002). A trial court has broad discretion to determine the admissibility of evidence,
and we will reverse only if that discretion has been abused, i.e., if the trial court acted
without reference to any guiding principles. Keo v. Vu, 76 S.W.3d 725, 730 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). Non-scientific testimony is admissible
if it is offered by a qualified expert and the testimony is relevant and based on a
reliable foundation. See Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713,
723 (Tex. 1998). Appellants challenged Fairchild’s qualifications to testify as to the
present and future value of Davis’s employment contract and contended that
Fairchild’s testimony was neither relevant nor based on a reliable foundation.
          Qualifications
          The record reflects that Fairchild has a doctorate in economics, teaches a
university course in corporate valuation, and often acts a consultant preparing
valuations for various corporations. That he has a PhD, instead of a master’s degree
in business administration, and is not a Certified Public Accountant does not mean
he was unqualified. The trial court did not abuse its discretion by implicitly finding
that Fairchild was qualified to offer expert testimony by virtue of his education, his
teaching experience, and his practical experience in corporate valuation.
          Relevance
          Expert testimony is relevant if it will aid the jury in resolving a factual dispute. 
E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995). Part
of the jury’s task in this case was to determine whether and to what extent Davis was
economically damaged when appellants breached the terms of his employment
contract. The trial court did not abuse its discretion by implicitly finding that
Fairchild’s testimony regarding the economic losses Davis sustained was clearly
relevant to the jury’s task.
          Foundation
          Scientific evidence must have a reliable foundation. Gammill, 972 S.W.2d at
723. To that end, the trial court is charged with ensuring that the expert opinion
comports with applicable professional standards. Id. at 725. Fairchild testified that
his top-down approach to corporate valuation is considered the only valid approach
to valuation in academia, and is also generally accepted in the financial community
as a valid method. KMG did not rebut this method of valuation at trial; nor did it
offer an alternate method of valuation. The record reflects that Fairchild admitted
that corporate valuation necessarily entails a fundamental degree of speculation; but
that does not mean that the underlying foundation of the methodology is unreliable,
nor was any authority offered that rejected the top-down approach to corporate
valuation as unreliable. In addition, although Fairchild had to make a number of
assumptions about the future business of Inliner Advantage, he also was able to
review the actual business history of Inliner Advantage’s predecessor company,
Inliner U.S.A., and its successor company, Inliner Technologies. Davis was
associated with all three companies. Opinions or estimates of lost profits are
competent evidence of lost profits if they are based on objective facts, figures, or data
from which the amount of lost profits can be ascertained. Texaco, Inc. v. Phan, 137
S.W.3d 763, 771 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Recovery of lost
profits must be predicated on one complete calculation, but there is more than one
correct method to calculate lost profits. Id. In the absence of contrary evidence, we
are persuaded that the trial court did not abuse its discretion by implicitly finding that
Fairchild’s approach to valuing the corporation comported with applicable
professional standards.
          In sum, the record reflects that Fairchild was qualified, his testimony was
relevant, and his methodolgy was reliable. Therefore, the trial court did not err in
admitting his testimony. 
          We overrule appellants’ second issue.
Jury Charge Error
          Appellants allege jury charge error in three of their issues.
          Membership in Inliner Advantage
          In their third issue, appellants contend the trial court erred in submitting
question one to the jury—“Was Davis a member of Inliner Advantage?”


 Appellants
contend that this question had already been answered as a matter of law. 
          Appellants filed a motion for partial summary judgment and dismissal of
Davis’s derivative shareholder claims, which the trial court granted. Because they
argued in their motion that Davis was not a member of Inliner Advantage and that he
did not have standing or capacity to bring a derivative action, appellants contend that
by granting their motion for partial summary judgment the trial court had already
found as a matter of law that Davis was not a member of Inliner Advantage; thus, the
jury should not have been permitted to answer this question. 
          The record supports Davis’s contention that appellants characterized the
question of whether Davis was a member of Inliner Advantage as an issue of fact. 
Moreover, appellants did not object to submission of question one to the jury. 
Accordingly, they have not preserved error. See Tex. R. Civ. P. 274 (providing that
party objecting to charge must point out distinctly the objectionable matter and
grounds of objection); Tex. R. App. P. 33.1 (providing that party must make timely
objection to preserve error for appellate review).
          We overrule the third issue.
 
          Intentional Interference with Contract
          In their sixth issue, appellants contend that the jury’s answer of “Yes” to
question six, “Did KMGI intentionally interfere with Robert Davis’s employment
contract with Inliner Advantage?,” was irreconcilable with its answer of “Yes” to
question seven, “Did KMGI interfere because it had a good faith belief that it had a
right to do so?”
          We do not consider these answers irreconcilable. Justification is an affirmative
defense to tortious interference with contract based on either the exercise of (1) one’s
own legal rights, or (2) a good faith claim to a colorable legal right, even though that
claim ultimately proves to be mistaken. Tex. Beef Cattle Co. v. Green, 921 S.W.2d
203, 211 (Tex. 1996). If a defendant cannot establish a legal right as a matter of law,
it may prevail on its justification defense if (1) the trial court determines that the
defendant interfered while exercising a colorable legal right and (2) the jury finds that
the defendant exercised the colorable legal right in good faith. Id. Here, the jury was
instructed to answer additional questions about whether KMGI acted with malice and
what actual or exemplary damages resulted from the interference only if it answered
“No” to question seven; in other words, only if the jury found that the interference
was not justified would it have considered the issues of malice and damages. The
jury’s award of damages was based on its answers to questions other than six and
seven.
          Even if the answers had been irreconcilable, appellants were required to make
a timely objection to the trial court. The Rules of Civil Procedure permit the trial
court to direct the jury to correct its verdict when its answers are in conflict. Tex. R.
Civ. P. 295. Thus, to preserve error, an appellant must object to the conflict or
inconsistency before the jury is discharged. Greater Houston Transp. Co. v. Zrubeck,
850 S.W.2d 579, 586 (Tex. App.—Corpus Christi 1993, writ denied); Roling v.
Alamo Group (USA), Inc., 840 S.W.2d 107, 109 (Tex. App.—Eastland 1992, writ
denied). Appellants did not preserve error for our review.
          We overrule the sixth issue.
          Measure of Damages
          In their fifth issue, appellants contend the trial court erred in submitting
question 17—“What sum of money, if any, paid now in cash, would fairly and
reasonably compensate Robert Davis for his damages, if any, that were proximately
caused by such negligent misrepresentation?”— because the question improperly
commingled past and future damages. The record shows that the objection to this
question at trial was based on insufficient evidence, not on commingling of damages:
“Question No. 17, I also [sic] object on the basis there’s no evidence or insufficient
evidence to justify a submission of those [sic] questions to the jury.” No other
objection to question 17 was lodged. This trial objection does not comport with the
challenge made on appeal. Accordingly, any error is waived. See Bracewell v.
Bracewell, 31 S.W.3d 610, 616 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)
(holding that error waived when objection to jury charge at trial differed from
objection on appeal); see also Haskett v. Butts, 83 S.W.3d 213, 220 (Tex.
App.—Waco 2002, pet. denied) (holding that defendant waived complaint that
evidence was legally and factually insufficient to show which of plaintiff's medical
expenses may have been associated only with claims in lawsuit because defendant did
not object or request instruction requiring jury to segregate damages).
          Appellants further contend in their fifth issue that the measure of damages was
improper because the proper remedy for a claim of negligent misrepresentation is
“out-of-pocket expenses,” not the “benefit-of-the-bargain” damages typically awarded
for breach-of-contract claims. Appellants did not make a timely, specific objection
to question 17 on this basis. The failure to object that the damages issue was based
on the wrong measure of damages waived any error as to the form or substance of the
damages issue. See CM Ashfal Agency v. Tensor, Inc., 135 S.W.3d 768, 786 (Tex.
App.—Houston [1st Dist.] 2004, no pet.); see also Tom Benson Chevrolet, Inc. v.
Alvarado, 636 S.W.2d 815, 822-23 (Tex. App.—San Antonio 1982, writ ref’d n.r.e.);
Traylor v. Gray, 547 S.W.2d 644, 658 (Tex. Civ. App.—Corpus Christi 1977, writ
ref’d n.r.e.). Appellants made only one “overarching” objection at trial to all “tort
claims” on the ground that the evidence of damages could be characterized only as
“economic loss to the subject matter of the contract itself.” Only in post-trial motions
did appellants specifically challenge the measure of damages used in question 17. 
          Because appellants failed to make a timely objection to the jury instructions
concerning the type and measure of damages, we conclude that they waived their
complaint that the trial court awarded negligent misrepresentation damages based on
a legally incorrect measure of damages. See Columbia/HCA Healthcare Corp. v.
Cottey, 72 S.W.3d 735, 747 (Tex. App.—Waco 2002, no pet.) (determining that,
because there was no objection to charge as submitted, defendants could not complain
on appeal that jury awarded damages which would not otherwise be recoverable for
fraudulent inducement); Tribble & Stephens Co. v. Consol. Servs., Inc., 744 S.W.2d
945, 949 (Tex. App.—San Antonio 1987, writ denied) (holding that defendant had
waived right to complain on appeal that plaintiff had offered insufficient evidence of
proper measure of damages because defendant failed to point out to trial court that
improper measure of damages was submitted to jury); Vaughn Bldg. Corp. v. Austin
Co., 620 S.W.2d 678, 683 (Tex. Civ. App.—Dallas 1981), aff’d, 643 S.W.2d 113
(Tex. 1982) (concluding that sufficiency-of-evidence challenge based on contention
that erroneous measure of damages was submitted to jury was waived by defendant’s
failure to object on that basis in trial court).
          We overrule the fifth issue.
          We hold that appellants have not preserved error in the jury charge itself. To
the extent that appellants challenge the sufficiency of the evidence to support the
submission of questions one and 17 to the jury in their fifth issue, we address this
challenge in the next section of this opinion.
Legal Sufficiency of the Evidence
          In their fourth issue, appellants contend the evidence is legally insufficient to
support the jury’s finding that appellants’ made a negligent misrepresentation to
Davis on which he relied to his detriment. In their seventh issue, appellants contend
the trial court erred in denying its motion for a directed verdict. 
          Standard of Review
          When a party attacks the legal sufficiency of an adverse finding on an issue on
which it did not have the burden of proof at trial, it must show on appeal that there
is no evidence to support the adverse finding. Croucher v. Croucher, 660 S.W.2d 55,
58 (Tex. 1983). We consider only the evidence and inferences that tend to support
the finding and disregard all evidence and inferences to the contrary. Southwest Key
Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). If more than a scintilla
of evidence exists to support the finding, the no-evidence challenge fails. Formosa
Plastics Corp., U.S.A. v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d 41, 48
(Tex. 1998). More than a scintilla of evidence exists if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about a vital fact’s
existence. Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 782-83 (Tex. 2001). 
          The standard for review of the denial of a motion for directed verdict is the
same as that for legal sufficiency. Such a motion is properly granted only when there
is no evidence to support an affirmative jury award. Capital Title Co. v. Donaldson,
739 S.W.2d 384, 392 (Tex. App.—Houston [1st Dist.] 1987, no writ). If there is any
evidence of probative value raising an issue of fact on material questions presented,
a directed verdict is improper. Qantel Bus. Sys., Inc. v. Custom Controls, 761 S.W.2d
302, 304 (Tex. 1988). Because the standard of review is the same for both issues and
because the same evidence adduced at trial pertains to both issues, we analyze these
issues together.
          Evidence of Negligent Misrepresentation
          The elements of a cause of action for negligent misrepresentation are as
follows: (1) a representation was made by the defendant in the course of his business
or in a transaction in which the defendant had a pecuniary interest; (2) the defendant
supplied “false information” for the guidance of others in their business; (3) the
defendant did not exercise reasonable care or competence in obtaining or
communicating the information; and (4) the plaintiff suffered pecuniary loss by
justifiably relying on the defendant’s misrepresentation. Fed. Land Bank Ass’n of
Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).
          At trial, Davis identified three representations KMGI made to him that he
contended were negligent misrepresentations: (1) that he would be granted a five-percent membership in Inliner Advantage; (2) that Inliner Advantage would hold the
exclusive right to license persons in the United States to use the Inliner technology;
and (3) that he would receive a percentage of the fee for each license sold in the
United States. Jury question sixteen asked, “Did KMGI or KMGD make a negligent
misrepresentation on which Robert C. Davis justifiably relied?”; the jury answered
“Yes” as to both KMGI and KMGD. When asked to determine Davis’s damages
based on negligent misrepresentation, the jury was offered the five-percent
membership interest in the company that Davis was promised and the incentive fee
he was to receive for each license sold. The jury answered with no damages for loss
of incentive fees, but awarded $1,000,000 in damages to Davis for the negligent
misrepresentation made to him regarding his five-percent membership interest. Based
on the jury’s answers, we restrict our inquiry to whether the evidence was legally
sufficient to support the jury’s finding that KMGI and KMGD made a negligent
misrepresentation to Davis in regard to his membership interest in Inliner Advantage.
          Davis’s employment contract with KMGI included the following provision:
6.3Membership Interest Grant. Company agrees to grant
membership interest to Davis in the Company equal to five
percent of the outstanding capital interest at the time of issuance,
which grant shall be structured so as to be tax free to Davis.

Davis’s employment contract thus evidenced Inliner Advantage’s promise to grant
a five-percent membership interest to him.


 Appellants contend, however, that none
of the conditions precedent to granting a membership interest to Davis were met,
including a $5,000 capital contribution they contend Davis was required to make to
obtain membership; therefore, they contend, there is no evidence to support the jury’s
finding that the appellants made a negligent misrepresentation to Davis. 
          The issue here is not whether Davis actually became a member of Inliner
Advantage; rather, it is whether there was more than a scintilla of evidence to support
the finding that appellants negligently misrepresented to Davis that he would become
a member of Inliner Advantage and would be entitled to a five-percent interest in
Inliner Advantage without the payment of $5,000 as a condition precedent to
membership. Although a KMGI representative testified that a $5,000 contribution
from Davis was required before Davis could become a member of Inliner Advantage,
there is no mention of an initial $5,000 contribution in this or any other provision of
Davis’s employment contract. Moreover, the regulations proposed to govern Inliner
Advantage, although never executed, anticipated that Davis would be an initial
member of Inliner Advantage as of the date of execution of the regulations. While
the regulations also provided that initial members were to make the “Capital
Contribution” set forth by their names, no amount was set out by Davis’s name in the
column labeled “Initial Contribution”; rather, the regulations provided that Davis’s
“total commitment” to Inliner Advantage, i.e., the total amount Davis would be
required to contribute to Inliner Advantage over an unspecified period of time, was
to be $5,000.



 
          The employment contract and the regulations constitute evidence from which
the jury could have inferred that appellants made a representation to Davis that he
would become a member of Inliner Advantage with a five-percent interest without
payment of $5,000 as a condition precedent to membership. Davis testified that he
relied on appellants’ representations regarding his membership interest and that he
never received this interest. Fairchild testified as to the economic loss Davis
sustained when he did not receive the membership interest.
          Based on the foregoing, we hold that Davis presented more than a scintilla of
evidence on each element of negligent misrepresentation. The evidence was thus
legally sufficient to sustain the jury’s finding on negligent misrepresentation and to
justify submission of a damages question pertaining to this misrepresentation. 
Therefore, the trial court did not err in submitting the damages question or in denying
appellants’ motion for directed verdict. 
          Evidence of Amount of Damages
          We have previously held that appellants waived any error in regard to whether
the measure of damages was proper. We further hold that the evidence was legally
sufficient to sustain the amount of damages awarded. A jury has the discretion to
award damages withing the range of evidence presented at trial. Knox v. Taylor, 992
S.W.2d 40, 62 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Here, Fairchild’s
damages models showed a range of damages from $1.8 million to $2.9 million, while
appellants’ expert estimated damages at roughly $82,000. The jury’s damages award
fell within the range of evidence presented; thus it was supported by legally sufficient
evidence. Id.
          We overrule the fourth and seventh issues. We further overrule those portions
of the fifth issue challenging the sufficiency of the evidence supporting submission
of questions one and seventeen to the jury.
Prejudgment Interest
          In their eighth issue, appellants contend the trial court improperly calculated
prejudgment interest on the jury’s damages award because past and future damages
were not segregated. The record supports appellants’ assertion that the damages were
not separated. Question 17 asked the jury to fill in the amount of damages for “[t]he
value of Robert Davis’ 5% equity interest in Advantage, L.L.C. Robert Davis lost in
the past and the value that, in reasonable probability, Robert Davis will lose in the
future.” The jury wrote in damages of $1,000,000.
          In arguing that prejudgment interest should not have been awarded because
past and future damages were not segregated, appellants rely principally on Cavnar
v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985). In Cavnar, the
court held that, because the Cavnar children were awarded damages for both their
past and their future losses in lump sums and did not tender special issues segregating
past losses from future losses, the children were not entitled to recover prejudgment
interest on those elements of damages. Id. at 556.
          Davis contends that the holding in Cavnar has been superseded by statute. See
Tex. Fin. Code Ann. § 304.101 (Vernon Supp. 2004-2005). This is true, but it is true
only when the damages are awarded based on a party’s claim for wrongful death,
personal injury, or property damage. See id.; accord C&H Nationwide, Inc. v.
Thompson, 903 S.W.2d 315, 324 (Tex. 1994). When, however, as here, the damages
are awarded for economic injury, not for personal injury, Cavnar still controls. See
Casteel v. Crown Life Ins. Co., 3 S.W.3d 582, 596 (Tex. App.—Austin 1997), rev’d
in part on other grounds, 22 S.W.3d 378, 391 (Tex. 2000) (reaffirming viability of
Cavnar). Thus, because past and future damages were submitted to the jury but were
not segregated in the damages question, Davis is not entitled to prejudgment interest. 
See Casteel, 3 S.W.3d at 596.
          We sustain appellants’ eighth issue.
Conclusion
          We modify the trial court’s judgment to vacate the award of prejudgment
interest and we affirm the judgment as modified.
 
 
                                                             Evelyn V. Keyes
                                                             Justice


Panel consists of Chief Justice Radack and Justices Keyes and Alcala.