**Opinion issued July 14, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-14-00800-CV

_____

**PROPPANT SOLUTIONS, LLC, Appellant**

**V.**

**EMMA DELGADO, Appellee**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-17992**

---

## DISSENTING OPINION

The majority affirms the dismissal of defendant Emma Delgado from this litigation for lack of personal jurisdiction. I respectfully dissent. In my view, the majority opinion misconstrues the relevant facts and law in dismissing from the litigation a defendant who plainly has minimum contacts with Texas; and in doing

so, it denies constitutional fair play and substantial justice to the other defendants in this case and to Proppant Solutions.

Plaintiff Proppant Solutions, LLC, has alleged that Delgado, an owner, secretary, and Director for Administration/Finance of Defendant ChristDel Corporation, established minimum contacts with Texas that submitted her to its long-arm jurisdiction by her participation in the fraudulent inducement and fraudulent performance of the underlying agreement between ChristDel and Proppant Solutions. Under the agreement, ChristDel agreed to provide logistics for the receipt in China of Chinese-manufactured ceramic proppant used in oil field fracking, its delivery to the Port of Houston, its storage in Houston, its transportation across Texas, and its delivery to Proppant Solutions' customer, EOG Resources, Inc., in Pleasanton, Texas.

I agree with Proppant Solutions that Delgado is subject to personal jurisdiction in Texas—to which all other parties have submitted, including ChristDel—and I would so hold.

### Background Facts

It is undisputed that Delgado, a resident of Tennessee, was an owner, the Secretary, and the Director of Administration/Finance of defendant ChristDel Corporation, a Tennessee corporation, at the time the parties entered into and performed the underlying "Service Contract" (the "ChristDel/Proppant Solutions

2

Contract") between ChristDel and Proppant Solutions, a California limited liability company. Proppant Solutions' allegations of fraudulent inducement and fraud against Delgado arise from her participation in the negotiation and performance of the ChristDel/Proppant Solutions Contract.

The ChristDel/Proppant Solutions Contract itself was the result of an agreement between Proppant Solutions and its customer, EOG Resources, Inc., a Texas corporation, obligating Proppant Solutions to ship proppant from China to Pleasanton, Texas, for delivery to EOG (the "Proppant Solutions/EOG Agreement"). Proppant Solutions entered into the ChristDel/Proppant Solutions Contract to enable it to perform its obligations under the Proppant Solutions/EOG Agreement. Also pursuant to the Proppant Solutions/EOG Agreement, Proppant Solutions entered into a contract with a Chinese company, Pacific Ark, Inc. ("PacArk"), to purchase proppant manufactured in the People's Republic of China to be delivered to Qingdau, China for export to Texas in thirteen monthly shipments (the "Ceramic Proppant Contract").

The ChristDel/Proppant Solutions Contract contained a merger clause, which provided that "[t]his contract, including referenced exhibits, represents all of the terms and conditions agreed upon by the parties and represents the entire agreement between the parties." The referenced exhibits included the Proppant Solutions/EOG Agreement (Exhibit A) and the Ceramic Proppant Contract

3

(Exhibit B). The "entire agreement" thus included all three contracts. Proppant Solutions filed a copy of the ChristDel/Proppant Solutions Contract referencing its exhibits as an exhibit in this special appearance proceeding.

Pursuant to the ChristDel/Proppant Solutions Contract, ChristDel agreed to accept delivery from PacArk of each monthly shipment of proppant in Qingdau, or another agreed-upon Chinese port of departure, for shipping to the Port of Houston and on to the end destination, Pleasanton, Texas, for delivery to a warehouse to be designated by EOG and provided by Proppant Solutions to ChristDel in advance of each monthly shipment. ChristDel agreed to arrange transportation of the proppant from the port of departure in China to Pleasanton on a schedule consistent with both the Proppant Solutions/EOG Agreement and the Ceramic Proppant Contract; to provide adequate vessel space to carry the proppant; to provide a commercial invoice and packing list for each monthly shipment; to serve as the importer of record; to manage customs clearance and inspections; to receive each monthly shipment at the Port Terminal in Houston, Texas; and to cause the proppant to be transported suitably to Pleasanton. ChristDel also agreed to warehouse the proppant in its Houston facility until the proppant was delivered to Pleasanton in the event that EOG was unable or unwilling to accept the proppant within thirty days of its arrival in Houston.

4

ChristDel further committed to regularly exchange information with regard to shipping schedules, the status of the monthly shipments once they left China, and the anticipated delivery date in order "to comply with the requirements of the [Proppant Solutions/EOG] Agreement and [the Ceramic] Proppant Contract and not incur any unnecessary delays or expense"; "to issue a bill of lading for each monthly shipment and to fax or email it directly to EOG as required by the [Proppant Solutions/EOG] Agreement and copied to [Proppant Solutions]"; to direct the transportation of each monthly shipment of proppant; to make all logistical decisions applicable to each monthly shipment "in order to meet the requirements of [the ChristDel/Proppant Solutions] Contract, the [Proppant Solutions/EOG] Agreement, and the [Ceramic] Proppant Contract"; and to provide the necessary staff, employees, and contractors to fulfill the requirements of the ChristDel/Proppant Solutions Contract.

Proppant Solutions, in return, agreed to pay ChristDel a fixed rate of $1.51 for each pound of proppant shipped under the contract (the "base charge"); and ChristDel agreed to be responsible for paying all normal and customary charges associated with shipping, importing, and transporting the monthly shipments of proppant. Proppant Solutions also agreed to be responsible for certain other charges as specified in the ChristDel/Proppant Solutions Contract.

According to the pleadings and exhibits in this special appearance proceeding, many tons of proppant were received by ChristDel at the Port of Houston in monthly shipments delivered over a period of eighteen months pursuant to the ChristDel/Proppant Solutions Contract, at a total cost of $59 million. The proppant was stored by ChristDel in its warehouse in Houston as necessary to fulfill the Proppant Solutions/EOG Agreement. The proppant was moved through Texas under arrangements made by Delgado and others at ChristDel. And ChristDel arranged its delivery to EOG in Pleasanton, Texas.

From ChristDel's headquarters in Tennessee, Delgado helped organize the receipt of the proppant in Houston and arranged for trucks to deliver it to Pleasanton. She personally visited Texas to review the operations with Proppant Solutions and EOG. She also exchanged numerous emails and telephone calls with Proppant Solutions' 40%-owner and representative in Houston, Michael Hall—who was also Proppant Solutions' chief financial officer, just as Delgado was ChristDel's Director for Administration and Finance—and others in Texas to arrange the logistics and finances for the storage and transportation of the proppant. Delgado also sent the allegedly fraudulent invoices to Hall in Texas, and these invoices are the primary basis for Proppant Solutions' fraud claims.

As support for its pleadings in this special appearance proceeding filed by Delgado, Proppant Solutions filed an affidavit by Hall, who had primary

6

responsibility for the company's financial matters. In his affidavit, Hall averred that he worked primarily out of his home in Texas and dealt directly with Delgado regarding "finance and billing" by email and telephone from her office in Tennessee to his home in Texas, where she also sent him invoices for ChristDel's expenses. One of these expense items invoiced Proppant Solutions for a visit to Texas made by Delgado to meet with EOG officials and tour their Pleasanton, Texas facility. Hall further stated that Delgado sent him documentation regarding the movement of proppant into the Port of Houston and on to Pleasanton.

Proppant Solutions also filed an affidavit signed by Ronald Cope, the principal shareholder of the Houston-based company that assisted ChristDel with shipping the proppant. Cope averred that he had estimated ChristDel's shipping cost at only ten cents per pound, but ChristDel marked up the cost to over fifteen cents per pound to increase its profits. In short, Cope provided a material part of the factual basis for concluding that the invoices sent by Delgado to Hall in Texas contained fraudulent misrepresentations of the shipping costs and that the performance of the contract was the execution of a scheme to defraud Proppant Solutions to the personal enrichment of ChristDel and its owners and officers, including Delgado.

Delgado, however, contends, and the majority agrees, that under the law and the facts of this case, she lacks the minimum contacts with Texas necessary to

7

subject her to personal jurisdiction in Texas under the Texas long-arm statute on the claims of fraudulent inducement and fraud brought against her by Proppant Solutions for her actions in negotiating and performing the ChristDel/Proppant Solutions Contract. I disagree. I would hold that the Texas courts have jurisdiction over Delgado for purposes of this litigation, and I would therefore reverse the order of dismissal and remand the case for trial on the merits against all defendants, including Delgado.

## Law of Personal Jurisdiction

### A. The Scope of the Texas Long-Arm Statute and the Requirements of Federal and State Due Process

"Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010).

In relevant part, the Texas long-arm statute provides that a nonresident defendant submits himself to the jurisdiction of this state by doing business in this state if the nonresident, inter alia, "contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state" or "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2015).

8

In turn, federal due process requires two things. "First, the nonresident defendant must have purposefully established such minimum contacts with the forum state that the defendant could reasonably anticipate being sued there." *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 446 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84 (1985)). "Second, if the nonresident defendant has purposefully established minimum contacts with the forum, the exercise of personal jurisdiction must also comport with traditional notions of fair play and substantial justice." *Id.* at 447 (citing *Burger King*, 471 U.S. at 475–76, 105 S. Ct. at 2183–84).

### 1. *The first prong of due process: minimum contacts*

The first prong of due process, the minimum contacts element, is divided into specific and general jurisdiction. *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 (Tex. 1991). Proppant Solutions asserts that Delgado is subject to specific personal jurisdiction.

"Specific jurisdiction . . . arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco Operating Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576, 579 (Tex. 2007) (stating that specific jurisdiction requires satisfaction of "two co-equal components": privilege of

9

conducting activities in Texas and substantial connection between contacts and operative facts of litigation); *see Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (stating that for jurisdictional due process, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws") (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)).

In establishing purposeful availment, only the defendant's contacts with the forum state count; "the acts relied on must be 'purposeful' rather than fortuitous," and the "defendant must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction." *Michiana*, 168 S.W.3d at 785. "Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Id*. (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647, 70 S. Ct. 927, 929 (1950)).

To impose personal jurisdiction, it is not necessary that the defendant's conduct actually have occurred in Texas so long as her acts were purposefully directed towards the state. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S. Ct. 1482, 1487 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996); *SITQ E.U., Inc. v. REATA Rests., Inc*. 111 S.W.3d 638, 646 (Tex. App.—Fort Worth

10

2003, pet. denied). Indeed, "a defendant should reasonably anticipate being hauled into court where the effects of [her] conduct have been intentionally caused through that purposeful direction of activity toward the forum state, even if the defendant never physically enters the state." *SITQ E.U.*, 111 S.W.3d at 646. The courts consider the quality and nature of the defendant's contacts, not their number or the ubiquity of their means. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). "[T]he question . . . is not whether certain of [the defendant's] contacts with Texas, standing alone, are sufficient to subject [her] to personal jurisdiction here. Instead, it is whether there is a substantial connection between all of [her] Texas contacts, considered collectively, and the operative facts of the litigation." *Dodd v. Savino*, 426 S.W.3d 275, 286 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

2. *The second prong of due process: fair play and substantial justice*

To satisfy the second prong of federal due process, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *See Guardian Royal Exch.*, 815 S.W.2d at 226. In making this determination, a court must consider five factors: (1) the burden on the defendants; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and

(5) the shared interest of the several states in furthering fundamental, substantive social policies. *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113–16, 107 S. Ct. 1026, 1033–34 (1987); *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2185; *Guardian Royal Exch.*, 815 S.W.2d at 226. The defendant bears the burden of presenting a "compelling case" that exercising jurisdiction over her would not be fair and just. *See Spir Star AG*, 310 S.W.3d at 878 (quoting *Guardian Royal Exch.*, 815 S.W.2d at 231). Only rarely will the Texas courts' exercise of personal jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Guardian Royal Exch.*, 815 S.W.2d at 231.

### 3. Burden of proof of personal jurisdiction

To establish personal jurisdiction, a plaintiff initially need only plead allegations sufficient to bring a nonresident defendant within the terms of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). In a tort case, such as one alleging fraudulent inducement and fraud, the plaintiff must plead that the defendant committed a tortious act, in whole or in part, in Texas. *Id.* at 659. The plaintiff's original pleadings, as well as its response to the defendant's special appearance, can be considered in determining whether the plaintiff satisfied its burden. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 249 n.7 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

Because ultimate liability in tort is not a jurisdictional fact and the merits of the cause are not at issue, the jurisdictional inquiry focuses on whether plaintiff sufficiently established facts suggesting that the defendant should have anticipated being haled into a Texas court based on her actions. *See Ennis v. Loiseau*, 164 S.W.3d 698, 708–09 (Tex. App.—Austin 2005, no pet.); *Wright*, 137 S.W.3d at 246, 251. "Hence, if the evidence suggests that the nonresident [defendant] officer participated in tortious or fraudulent activities, which were directed at Texas and for which [she] may be held personally liable, then there is a sufficient basis to assert specific jurisdiction over [her]." *Ennis*, 164 S.W.3d at 709 (citing *Wright*, 137 S.W.3d at 251). If the plaintiff pleads sufficient jurisdictional allegations, the nonresident defendant assumes the burden of negating all bases of jurisdiction in the allegations. *Kelly*, 301 S.W.3d at 658; *Moki Mac*, 221 S.W.3d at 574.

## B.   *Delgado's Alleged Torts of Fraudulent Inducement and Fraud*

Proppant Solutions has sued Delgado personally for fraudulent inducement and fraud in the performance of the ChrisDel/Proppant Solutions Contract, which occurred in material part in Texas. It does not allege that the contract was negotiated or signed in Texas. However, Proppant Solutions alleges that Delgado personally made material misrepresentations about ChristDel's experience and contacts procuring proppant in China to induce Proppant Solutions to sign the ChristDel/Proppant Solutions Contract. Proppant Solutions also alleges that

13

Delgado personally oversaw part of the contract's performance in Texas and that she directed telephone calls, emails, and fraudulently inflated invoices into Texas in furtherance of the performance of the fraudulently induced contract.

Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *Clark v. Power Mktg. Direct, Inc.*, 192 S.W.3d 796, 799 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Thus, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties. *Haase,* 62 S.W.3d at 798–99. The operative facts of a fraudulent inducement claim are thus those that establish the elements of fraud with relation to the agreement between the parties.

The elements of fraud are: (1) that the speaker made a material misrepresentation (2) that he knew was false when he made it or that he made recklessly without any knowledge of its truth and as a positive assertion (3) with the intent that the other party act upon it and (4) that the other party acted in reliance on the misrepresentation and (5) suffered injury thereby. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). Fraud may also occur when (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the

14

party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754–55 (Tex. 2001); *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 408 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). A representation is material if "a reasonable person would attach importance to [it] and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy*, 341 S.W.3d at 337.

Silence also may be equivalent to a false representation when the particular circumstances impose a duty on the party to speak and the party nevertheless deliberately remains silent. *Bradford*, 48 S.W.3d at 755; *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 353 (Tex. 1995). Whether a duty to disclose exists is a question of law. *Bradford*, 48 S.W.3d at 755.

Texas law provides that a corporate employee is personally liable for her own fraudulent or tortious acts which she directs or participates in during her employment. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002); *Leyendecker & Assocs., Inc., v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.—Dallas 2007, no pet.).

15

**Analysis of Delgado's Texas Contacts Based on Pleadings of Fraudulent Inducement and Fraudulent Performance of Contract**

I would hold that Proppant Solutions has established that Delgado had minimum contacts with Texas in that she purposefully availed herself of the forum for the purpose of conducting activities within it and that Proppant Solutions' allegations of fraud and fraudulent inducement against her arose out of her contacts with Texas. Therefore, Delgado is subject to personal jurisdiction in Texas for doing business in Texas within the scope of Texas's long-arm statute by committing a tort in whole or in part in Texas. *See* TEX CIV. PRAC. & REM. CODE ANN. § 17.042. I would also hold that the Texas courts' exercise of jurisdiction over Delgado in the underlying proceedings comports with fair play and substantial justice.

**A.  *Delgado's Minimum Contacts with Texas***

To establish Delgado's minimum contacts with Texas, Proppant Solutions was required to show that she purposefully availed herself of the forum by conducting activities in Texas and that there was a substantial connection between her contacts with Texas and the operative facts of the underlying litigation. *See Moki Mac*, 221 S.W.3d at 576, 579 (specific jurisdiction requires satisfaction of "two co-equal components": privilege of conducting activities in Texas and substantial connection between contacts and operative facts of litigation). In the context of its allegations of fraudulent inducement and fraud, that means that

16

Proppant Solutions had to adduce pleadings and evidence suggesting that Delgado participated in tortious or fraudulent activities that were directed at Texas and for which she may be held personally liable. *See Ennis*, 164 S.W.3d at 709; *Wright*, 137 S.W.3d at 251. I would hold that Proppant Solutions fully carried its burden.

The undisputed facts in the record show that Delgado, as a director and the financial officer of ChristDel, participated in negotiating the ChristDel/Proppant Solutions Contract, which was to be performed in material part in Texas, where the oil field proppant was to be received, stored, transported, and delivered to EOG by ChristDel. Proppant Solutions has alleged that, during the course of these negotiations, Delgado, along with the other owners and principals of ChristDel, made material misrepresentations about ChristDel's experience and contacts in China, which they all knew were false when made, with the intent that Proppant Solutions act upon them and enter into the contract with ChristDel. Proppant Solutions has further alleged that it acted in reliance on the misrepresentations and that it suffered millions of dollars in injuries due to the misrepresentations of Delgado and others. The jurisdictional evidence also suggests that Delgado was personally involved in performing the contract, including traveling to Texas to meet with EOG representatives; directing multiple emails and phone calls to Texas for the purpose of arranging transport and financing for receiving, storing, and

delivering the proppant in Texas; and sending allegedly fraudulent invoices to Hall at his home office in Texas.

I would hold that Proppant Solutions alleged facts sufficient to establish that Delgado, whether by making affirmative misrepresentations or by remaining silent when she had a duty to speak, participated in the fraudulent inducement of a contract to be performed in material part in Texas and directed fraudulent invoices to Texas. It alleged that each corporate defendant, including Delgado, concealed or failed to disclose material facts within their knowledge about the experience and contacts of ChristDel with proppant suppliers in China and the cost of the proppant, knowing that Proppant Solutions was ignorant of these facts and did not have an equal opportunity to discover the truth, and intending to induce Proppant Solutions to sign the contract by concealing or failing to disclose these facts, to the injury of Proppant Solutions. *See Bradford*, 48 S.W.3d at 754–55; *JSC Neftegas-Impex*, 365 S.W.3d at 408. In my view, these particular circumstances imposed a duty on all of the ChristDel parties to disclose facts and, therefore, the silence of any ChristDel party, including Delgado, during these negotiations in which material misrepresentations within their knowledge were made was equivalent to making the false representations. *See Bradford*, 48 S.W.3d at 755; *SmithKline Beecham Corp.*, 903 S.W.2d at 353.

18

There is no question that the act of negotiating a contract to be performed in large part in Texas was a purposeful act by which all of the participants, including Delgado, a principal of ChristDel, sought profits on the contract, which could be obtained only by ChristDel and its principals' creating ongoing logistics operations with Proppant Solutions and EOG in Texas. *See Michiana*, 168 S.W.3d at 786 (stating that in establishing purposeful availment, only defendant's contacts with forum state count; "the acts relied on must be 'purposeful' rather than fortuitous"; and "defendant must seek some benefit, advantage, or profit by 'availing' [herself] of the jurisdiction").

As stated by the United States Supreme Court in *Travelers Health* and the Texas Supreme Court in *Michiana*, "Sellers who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the jurisdiction of the latter in suits based on their activities." *Id*. (quoting *Travelers Health*, 339 U.S. at 647, 70 S. Ct. at 929). It was not necessary that Delgado's participation in the contract negotiations actually have occurred in Texas so long as the negotiations were purposefully directed to inducing a contract to be performed in large part in Texas. *See SITQ E.U.*, 111 S.W.3d at 646 ("[A] defendant should reasonably anticipate being haled into court where the effects of [her] conduct have been intentionally caused through that purposeful direction of

activity toward the forum state, even if the defendant never physically enters the state.").

In addition, the record plainly shows that, once the ChristDel/Proppant Solutions Contract was made, Delgado was a principal figure in its performance in Texas. In accordance with the terms of the ChristDel/Proppant Solutions Contract, and in exchange for sums agreed on in that contract, ChristDel arranged for the receipt of many tons of ceramic proppant in China and for its transportation to the Port of Houston in monthly shipments delivered over a period of eighteen months. ChristDel stored the proppant in its warehouse in Houston as necessary to meet the purposes of the Proppant Solutions/EOG Agreement. ChristDel arranged for the transportation of the proppant through Texas under arrangements made by Proppant Solutions and itself with EOG, and it delivered the proppant to EOG at its ultimate destination in Pleasanton, Texas.

Delgado helped organize the receipt of the proppant in Houston, and she arranged for trucks to deliver it to Pleasanton. She exchanged numerous emails and telephone calls with Hall, Proppant Solutions' co-owner and representative in Houston, arranging the logistics of the transportation and dealing with financing and billing. She personally visited Texas to review the operations with Proppant Solutions and EOG, and she sent the allegedly fraudulent invoices to Hall in Houston for payment.

I can only conclude, on the basis of these facts, that Delgado's contacts with Texas in connection with the negotiation and performance of the ChristDel/Proppant Solutions Contract are substantially connected to the operative facts of the litigation and show that she clearly purposefully availed herself of the privilege and benefits of conducting business in Texas under a contract from which she personally profited. There is a substantial connection between Delgado's Texas contacts, considered collectively, and the operative facts of the litigation. *See Dodd*, 426 S.W.3d at 286; *SITQ E.U.*, 111 S.W.3d at 646. Proppant Solutions presented facts suggesting that Delgado directed fraudulent activities—for which she can be held personally liable—at Texas, such that she should have anticipated being haled into court here based on her actions. *See Ennis*, 164 S.W.3d at 708–09; *Wright*, 137 S.W.3d at 248, 251; *see also Wechter*, 683 S.W.2d at 375 (holding that corporate employee or officer is personally liable for her own fraudulent or tortious acts that she directs or participates in during her employment).

I would hold that Proppant Solutions has borne its burden of establishing the minimum contacts prong of the Texas courts' personal jurisdiction over Delgado with respect to the activities made the subject of this litigation.

## B. *Fair Play and Substantial Justice*

There is also no question, to my mind, that subjecting Delgado to personal jurisdiction in this case comports with fair play and substantial justice, whereas

allowing her—alone among the principals of ChristDel—to escape trial and potential liability for her own alleged acts of fraud or fraudulent inducement shown to have a substantial connection with the operative facts of this case, as the majority opinion does, denies fair play and substantial justice not only to Proppant Solutions but to all the other parties. *See Guardian Royal Exch.*, 815 S.W.2d at 231 (listing five factors in establishing fair play and substantial justice: (1) burden on defendants; (2) interests of forum state in adjudicating dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) interstate judicial system's interest in obtaining most efficient resolution of controversies; and (5) shared interest of states in furthering fundamental, substantive social policies).

First, the financial burden on Delgado of litigating this dispute in Texas—where litigation is already underway and all other defendants have submitted to jurisdiction and appeared and answered, where the contract was principally performed, and where over $59 million in business was done, including $6.5 million in profits generated from Proppant Solutions—is not excessive compared to the total burden on the parties imposed by the costs of the litigation. By contrast, allowing Delgado alone to avoid trial and potential liability increases the burden on all the other parties. It means either that the case must be tried elsewhere, where all defendants are subject to personal jurisdiction, or that Delgado alone must be allowed to escape trial and potential liability for any torts

she may have committed or participated in committing during the inducement and performance of the ChristDel/Proppant Solutions Contract, or that Proppant Solutions must bring suit against Delgado alone in Tennessee, thus creating piecemeal litigation and increasing the burden of costs and potential liability on all other defendants.

Second, Texas has a vested interest in adjudicating this dispute. The ChristDel/Proppant Solutions Contract expressly provides that the contract shall be "construed and interpreted in accordance with laws of the State of Texas," and any action "brought hereunder" is subject to venue in Harris County, Texas. Houston is the venue in which Proppant Solutions is afforded the most convenient and effective relief. It has an office here and Hall, a Texas resident, is a 40% owner of it. Likewise, Juan Delgado, one of the other defendants, is a Texas resident.

Third, ChristDel, of which Emma Delgado is a corporate director and owner, has already filed an answer in this action, as has Marc Delgado, another defendant and ChristDel co-owner and director, who is also a Tennessee resident.

Fourth, under these circumstances, the most efficient resolution of the controversy demands that Emma Delgado be subjected to personal jurisdiction in Texas, to which her co-defendants have voluntarily submitted.

Finally, resolution of the entire controversy in this Texas litigation comports with the shared interest of both Tennessee and Texas in furthering fundamental,

substantive social policies, and no one has presented any argument or evidence to show that it does not.

For all the foregoing reasons, I would hold that Emma Delgado is subject to specific personal jurisdiction in this litigation arising out of her alleged commission of the torts of fraudulent inducement and fraud in the performance of the ChristDel/Proppant Solutions Contract and that subjecting her to the jurisdiction of the Texas courts fully satisfies the constitutional requirements of fair play and substantial justice. I would, therefore, deny her special appearance and remand this case for trial on the merits.

**Response to the Majority's Jurisdictional Analysis**

In my view, both the majority's reasoning and its holding that Delgado is not subject to personal jurisdiction in Texas on the facts of this case are deeply flawed.

First, the majority fails to recognize the distinction between establishing personal jurisdiction over a defendant in a stream of commerce case and establishing personal jurisdiction over a defendant in a fraud and fraudulent inducement case brought with respect to the negotiation and performance of a contract between and among sophisticated businesses in furtherance of interrelated agreements among them. Consequently, it incorrectly relies on *Michiana*, a general "stream of commerce" case, and *Moki Mac* as controlling authority. Neither is

relevant to the determination of the Texas courts' jurisdiction over Delgado in this litigation.

Second, the majority maintains that "Emma's participation in contract negotiations was not a purposeful contact with Texas." This claim is unsustainable under the facts of this case for the reasons set forth above.

Regarding the majority's reliance on stream of commerce cases, the majority claims that "a defendant will not be haled into a jurisdiction solely based on contacts that are 'random, isolated, or fortuitous.'" Slip Op. at 12 (citing *Michiana*, 168 S.W.3d at 785). The majority recites the facts in *Michiana*—a phone call placed by the Texas plaintiff to Michiana, a factory outlet for Coachmen RVs that had placed its RVs in the stream of commerce resulting in the plaintiff's purchase of an RV, and Michiana's shipment of the RV to Texas, which the Texas Supreme Court held insufficient to establish personal jurisdiction over Michiana. The majority then takes these entirely disparate facts as the authority for its *own* finding, on the facts of this wholly dissimilar case, that Delgado had no purposeful contacts with Texas. Slip Op. at 12–13 (citing *Michiana*, 168 S.W.3d at 781, 784, 788–92). There is simply no relationship between the operative jurisdictional facts in *Michiana* and the operative jurisdictional facts in this case.

Despite the majority's recitations, neither the ChristDel/Proppant Solutions Contract nor the Proppant Solutions/EOG Agreement that it incorporated reflected

25

the "mere sale of a product to a Texas resident." *See* Slip Op. at 13 (citing *Moki Mac*, 221 S.W.3d at 577). Proppant Solutions' claims against Delgado are not mere contract claims based on a product ChristDel launched into the stream of commerce and Proppant Solutions happened to purchase in Texas, as in *Michiana*. Proppant Solutions' claims against Delgado are are tort claims based on Delgado's own tortious participation in negotiating and performing a set of interrelated contracts among sophisticated business entities. Proppant Solutions has argued— and produced jurisdictional evidence—that Delgado participated in the torts of fraudulent inducement and fraud in the performance of a contract she and the other principals of ChristDel negotiated with Proppant Solutions and performed in principal part in Texas.

According to the record, Delgado's substantial personal involvement and conduct in both the inducement and the performance of the ChristDel/Proppant Solutions Contract were directed specifically at Texas. She allegedly made fraudulent misrepresentations with the intent of inducing Proppant Solutions into the contract, which was to be performed in large part in Texas, and she visited this state in furtherance of the performance of that contract. She made multiple phone calls and sent multiple emails to this state to perform ChristDel's contractual obligations. She arranged to receive the proppant at the Port of Houston, to store it in Houston, to transport it across the state of Texas, and to deliver it to EOG, a

26

Texas business. Finally, she sent allegedly fraudulently inflated invoices for ChristDel's performance of its contractual duties to Hall in Texas. The majority's reliance on stream of commerce cases like *Michiana* and *Moki Mac* can thus only be construed as entirely misplaced in light of these facts.

The majority's reliance on the wrong law also leads it to misconstrue the significance of Delgado's allegedly tortious actions in and directed to Texas to the proof of Proppant Solutions' claims. The majority concludes that ChristDel and its principals did not intend to direct their activities toward Texas. But this conclusion is completely at odds with the facts in the case. This is not a case in which Proppant Solutions complains that ChristDel placed advertisements in the stream of commerce directed to the general public and Proppant Solutions answered the ad and bought ChristDel's product. Yet the majority focuses entirely on ChristDel's marketing of its services to the public to the *exclusion* of any reference to the acts—either of contract negotiation or of contract performance—that Proppant Solutions alleges were committed by Delgado, were tortious, and were directed at Texas. Thus it concludes, incorrectly, that the reasoning of steam-of-commerce cases, such as *Michiana* and *Moki Mac*, is applicable to the determination of the Texas courts' jurisdiction over Delgado in this case. Slip Op. at 15–16. Consequently, it omits as irrelevant to its determination virtually all of the acts Proppant Solutions alleges Delgado committed in connection with the

27

alleged fraud that were specifically directed to Texas. And, in so doing, it disregards Delgado's participation in the operative facts of the litigation. Or it mentions these facts only to state that they do *not* show what they *do* show when construed in terms of what Proppant Solutions was required to prove to establish personal jurisdiction over Delgado under the facts of this case.

Dismissing Delgado's acts from consideration on the ground that she never attempted to market herself to Texas and had "no self-initiated contacts with Texas," the majority ignores Delgado's exchange of emails and phone calls to Texas to discuss financial and logistical matters, her arrangement of transportation, her review of the Texas facilities, her mailing of allegedly fraudulent invoices to Hall in Texas, and her receipt of millions of dollars in payments from Proppant Solutions. It then opines that Delgado's "only contacts with Texas were, much like in *Michiana . . .*, because a customer with ties to Texas contacted her Tennessee employer," and "Proppant Solutions actively recruited ChristDel and its personnel, not vice versa." Slip Op. at 15.

The majority also makes the factually incorrect claim that Delgado's coordination of the movement of proppant from the port of Houston to Pleasanton is insufficient "to establish purposeful availment" of the forum, Texas. Slip Op. at 19–20. And it makes the factually and legally incorrect claim that Delgado's visit to EOG's Pleasanton facility is not substantially related Proppant Solutions's

28

claims against Delgado and "cannot support special jurisdiction over Emma because no alleged liability arises from or is related to it." Slip Op. at 20.

The majority cites *Kelly* for support of its opinion. However, *Kelly* is a factually inapplicable personal jurisdiction case in which a Texas subcontractor on a hotel renovation project filed claims for third-party breach of contract, violations of the Texas Trust Fund Act, and fraud against the Arizona general contractor that had hired it. *Id.* The supreme court held that personal jurisdiction was lacking because, although the subcontractor had alleged two claims of wrongdoing, it had not alleged that any acts giving rise to those two claims occurred in Texas. *Id.* Here, by contrast, Proppant Solutions has alleged, in support of its allegations of fraudulent inducement and fraud, that Delgado directed numerous allegedly tortious activities to Texas, including making fraudulent misrepresentations to induce Proppant Solutions to enter a contract that was to be performed in large part in Texas and performing the obligations of that contract, including sending the allegedly fraudulent invoices to Texas.

## Conclusion

Because I believe the majority opinion fails to recognize the operative facts and controlling law of this personal jurisdiction case and misconstrues or misapplies the law governing personal jurisdiction, including constitutional standards of fair play and substantial justice, I must dissent. I would reverse the judgment of the trial court finding that the Texas courts lack jurisdiction over Delgado in this litigation, and I would remand the case for trial against all defendants on the merits.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Keyes, J., dissenting.